UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAI CHAN, HUI CHEN, and XUE XIE,
individually and on behalf of all others
similarly situated,

                    Plaintiffs,                              Case No.: 15-cv-9605 (KBF)


            - against -


CHINESE-AMERICAN PLANNING
COUNCIL HOME ATTENDANT
PROGRAM, INC.,


                    Defendant.


## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION


**Michael Taubenfeld, Esq.**
**SERRINS FISHER LLP**
**233 Broadway, Suite 2340**
**New York, NY 10279**
**Telephone: (212) 571-0700**

**David A. Colodny**
**Carmela Huang**
**URBAN JUSTICE CENTER**
**123 William Street, 16th Floor**
**New York, NY  10038**
**Telephone: (646) 602-5600**

**Edward Tuddenham**
**228 W. 137th St.**
**New York, New York 10030**
**Telephone: (212) 234-5953**


*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................... iii

PRELIMINARY STATEMENT ...................................................... 1

STATEMENT OF FACTS ............................................................ 3

    A.  Factual Background of This Case and Plaintiffs' Initial Complaint.. .......................... 3

    B.  The Dispute Resolution Procedure Created by the Collective Bargaining
    Agreement and the 2014 Memorandum of Agreement. ................................ 4

    C.  Defendant's Prior Failed Attempt to Compel Arbitration Before the State
    Court. ............................................................................ 5

    D.  The 2015 MOA. .............................................................. 5

    E.  Defendant's Attempt to Enforce the 2015 MOA and the NLRB Process.. ................. 6

ARGUMENT ......................................................................... 7

Point I – HAVING NOT BEEN RATIFIED, THE 2015 MOA HAS NOT BEEN FORMED
AND CANNOT BE A BASIS FOR COMPELLING ARBITRATION.. ..................... 7

    A.  Defendant Has Not Proven That the 2015 MOA Has Been Ratified by the Union
    and Defendant and Approved by HRA. ........................................... 7
        1.  This Court Must Determine Whether the CBA Was Ever Formed. ............. 7
        2.  The 2015 MOA Has Not Been Ratified. ................................... 9

    B.  The Court Should Also Deny Defendant's Motion to Compel Arbitration Based
    on the 2014 MOA.... ............................................................ 10
        1.  The State Court's Decision Refusing to Compel Arbitration
        Based On the 2014 MOA is the Law of the Case and Should be
        Followed... ..................................................................... 10
        2.  Even If Law of the Case Does Not Apply, the 2014 MOA Does
        Not Provide a Basis for Compelling Arbitration... .......................... 11

Point II – EVEN IF THE 2015 MOA IS EVENTUALLY RATIFIED, THE COURT SHOULD
NOT ENFORCE IT... ................................................................ 12

    A.  Binding Precedent Precludes a CBA from Waiving an Employee's Right to Assert
    FLSA Claims in Federal Court... ................................................ 13

i

B.  The 2015 MOA Precludes Plaintiffs From Effectively Vindicating Their Rights
Under the FLSA and NYLL and its Arbitration Provision Should not be Enforced... 14

C.  Defendant's Communications Through the Union with Potential Class Members
Render the Arbitration Provision of the 2015 MOA Unenforceable... ........................17

D.  The Court Should Decline to Compel Arbitration While National Labor Relations
Board Reviews the Propriety of the 2015 MOA.........................................................20

Point III – EVEN IF THE 2015 MOA IS RATIFIED AND IS ENFORCEABLE IT ONLY
APPLIES TO CLAIMS ARISING ON OR AFTER DECEMBER 1, 2015.... ............................21

A.  The 2015 MOA is Prospective.....................................................................................21

B.  Defendant's Cases Are Not on Point.... ......................................................................24

CONCLUSION...................................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**CASES:**

<u>14 Penn Plaza LLC v. Pyett</u>, 556 U.S. 247, 129 S. Ct. 1456, 173 L. Ed. 2d 398 (2009)..11

<u>Adams v. Suozzi</u>, 433 F.3d 220, 227 (2d Cir. 2005) ...........................................................9

<u>Agerbrink v. Model Service LLC</u>, No. 14 Civ. 7841(JPO)(JCF), 2015 WL 6473005 (S.D.N.Y. Oct. 27, 2015) ..................................................................................................18

<u>Alderman v. 21 Club Inc.</u>, 733 F. Supp. 2d 461 (S.D.N.Y. 2010)....................................13

<u>Am. Exp. Co. v. Italian Colors Rest.</u>, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013)............14

<u>Applied Energetics, Inc. v. NewOak Capital Markets, LLC</u>, 645 F.3d 522 (2d Cir. 2011) .............................................................................................................................8

<u>Arrigo v. Blue Fish Commodities, Inc.</u>, 408 F. App'x 480 (2d Cir. 2011) .......................24

<u>Arrigo v. Blue Fish Commodities, Inc.</u>, 704 F. Supp. 2d 299 (S.D.N.Y. 2010)...............10

<u>Barrentine v. Arkansas-Best Freight Sys., Inc.</u>, 450 U.S. 728, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981) ........................................................................................................13

<u>Bensadoun v. Jobe-Riat</u>, 316 F.3d 171 (2d Cir. 2003) ....................................................10

<u>Billingsley v. Citi Trends, Inc.</u>, 560 Fed.Appx. 914 (11th Cir. 2014) ..............................19

<u>Blair v. Scott Specialty Gases</u>, 283 F.3d 595 (3d Cir. 2002)............................................15

<u>Brooklyn Sav. Bank v. O'Neil</u>, 324 U.S. 697, 65 S. Ct. 895, 89 L. Ed. 1296 (1945)........14

<u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 546 U.S. 440 (2006) .......................................8

<u>Carnegie v. H&R Block, Inc.</u>, 687 N.Y.S.2d 528 (N.Y. Sup. Ct. 1999) ...........................19

<u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d 199 (2d Cir. 2015)............................14

Damato v. Time Warner Cable, Inc., No. 13-CV-994 ARR RML, 2013 WL 3968765
(E.D.N.Y. July 31, 2013) ...................................................................................17

Dedon GmbH v. Janus et Cie, No. 10 CIV. 04541 CM, 2010 WL 4227309 (S.D.N.Y.
Oct. 19, 2010) .....................................................................................................8

Duraku v. Tishman Speyer Properties, Inc., 714 F. Supp. 2d 470 (S.D.N.Y. 2010) ...24, 25

E.E.O.C. v. Rappaport, Hertz, Cherson & Rosenthal, P.C., 448 F. Supp. 2d 458
(E.D.N.Y. 2006)............................................................................................15, 16

Firestone v. Berrios, 42 F. Supp. 3d 403 (E.D.N.Y. 2013)...............................................11

Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287 (2010) .....................................8

Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 121 S. Ct. 513, 148 L. Ed.
2d 373 (2000) ....................................................................................................14

Gulf Oil Co. v. Bernard, 452 U.S. 89, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981).............17

Hendrick v. Brown & Root, Inc., 50 F. Supp. 2d 527 (E.D. Va. 1999)..............................22

Hines v. Overstock.com, Inc., 380 F. App'x 22 (2d Cir. 2010) ...........................................9

Holick v. Cellular Sales of New York, LLC, 802 F.3d 391 (2d Cir. 2015)........................21

In re Currency Conversion Fee Antitrust Litig., 361 F.Supp.2d 237 (S.D.N.Y. 2005)..17, 19

In re Sch. Asbestos Litig., 842 F.2d 671 (3d Cir. 1998)....................................................18

Jimenez v. Menzies Aviation, Case No. 15-cv-02392-WHO, 2015 WL 4914727
(N.D. Cal. 2015)................................................................................................19

Les Telecommunications d'Haiti S.A.M. v. Cine, No. 13-CV-6462, 2014 WL
2655451(E.D.N.Y. June 13, 2014) .....................................................................8

Long v. Fid. Water Sys., Inc., No. C-97-20118 RMW, 2000 WL 989914 (N.D. Cal. May
26, 2000) ...........................................................................................................23

Manning v. Boston Med. Ctr. Corp., 725 F.3d 34 (1st Cir. 2013)....................................14

McLean v. Garage Mgmt. Corp., No. 10 CIV. 3950 DLC, 2011 WL 1143003
(S.D.N.Y. Mar. 29, 2011) .................................................................12

Mehler v. Terminix Int'l Co. L.P., 205 F.3d 44 (2d Cir. 2000) ........................................21

Morrison v. Circuit City Stores, Inc., 317 F.3d 646 (6th Cir. 2003) ....................15, 16, 17

Nasso v. Seagal, 263 F. Supp. 2d 596 (E.D.N.Y. 2003)....................................................11

Nesbitt v. FCNH, Inc., No. 14-1502, 2016 WL 53816 (10th Cir. Jan. 5, 2016)..........15, 16

O'Connor v. Uber; No. 13-cv-03826, 2013 WL6407583 (N.D. Cal. Dec. 23, 2015) .......19

Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co., 86 N.Y.2d 685, 660 N.E.2d
415 (1995)........................................................................................................9

Ottley v. Sheepshead Nursing Home, 688 F.2d 883 (2d Cir. 1982). ................................21

Peerless Importers, Inc. v. Wine, Liquor & Distillery Workers Union Local One, 903 F.
2d 924 (2d Cir. 1990)..............................................................21

Ralph Oldsmobile, Inc. v. General Motors Corp., No. 99 Civ. 4567 (AGS), 2001 WL
1035132 (S.D.N.Y. Sept. 7, 2001)......................................17

Rogers v. New York Univ., 220 F.3d 73 (2d Cir. 2000) ....................................................11

Russell v. Citigroup, Inc, 748 F.3d 655 (6th Cir. 2014) ............................................22, 23

Sec. Watch, Inc. v. Sentinel Sys., Inc., 176 F.3d 369 (6th Cir. 1999) ..............................22

Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.,
198 F.3d 88 (2d Cir. 1999)....................................................25

Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 130 S. Ct. 1758, 176 L. Ed.
2d 605 (2010)...............................................................21

Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d 396 (2d Cir. 2009).....................8

Thomas v. Carnival Corp., 573 F.3d 1113 (11th Cir. 2009)..............................................22

Torah Soft Ltd. v. Drosnin, 224 F. Supp. 2d 704 (S.D.N.Y. 2002)............................10, 11

Tran v. Alphonse Hotel, 54 F.3d 115 (2d Cir. 1995)....................................................13, 14

Unique Woodworking, Inc. v. New York City Dist. Council of Carpenters' Pension Fund,
No. 07 CIV. 1951 (WCC), 2007 WL 4267632 (S.D.N.Y. Nov. 30, 2007) ........................8

Wu v. Pearson Educ. Inc., Nos. 09 Civ. 6557(RJH)(JCF), 10 Civ. 6537 (RJH)(JCF), 2011
WL 2314778 (S.D.N.Y. Jun. 7, 2011) ..............................................................................18

**OTHER AUTHORITIES:**

Fair Labor Standards Act of 1938, as amended

     29 U.S.C. § 216(b)  ................................................................................16

Wage Parity Act

     NY Home Care Worker Wage Parity Act, N.Y. Public Health Law § 3614-c........3

Fair Wages for New Yorkers Act

     Administrative Code for the City of New York § 6-109 .........................................4

Federal Arbitration Act

     9 U.S.C. § 4...............................................................................................7, 10

Federal Rules

     Rule 23 ................................................................................................17

## PRELIMINARY STATEMENT

In its motion to compel arbitration, Defendant Chinese-American Planning Council Home Attendant Program, Inc. ("Defendant") asks the Court enforce an arbitration provision in an agreement that has not yet come into effect, that is unenforceable and also does not apply to Plaintiffs' claims.  The Court should therefore deny Defendant's motion.

Plaintiffs Lai Chan, Hui Chen and Xue Xie ("Plaintiffs") are home care aides employed by Defendant.  Plaintiffs and Defendant's other home care aides regularly worked 24-hour shifts caring for elderly and infirm individuals.  For this difficult work, Defendant paid them $10.00 per hour on weekdays and $11.10 per hour on weekends for only 12 of the 24 hours they worked.  Defendant also paid them a single per diem payment of $16.95 each day they worked a 24-hour shift.

Plaintiffs filed an action in the Supreme Court of the State of New York in March 2015.  In December 2015, after the state court denied Defendant's motion to compel arbitration based on a previous Memorandum of Agreement ("2014 MOA"), Defendant and 1199SEIU United Healthcare Workers East (the "Union") entered into a Memorandum of Agreement ("2015 MOA") containing an arbitration provision that Defendant alleges is binding on Plaintiffs.  After removing the action to federal court, on December 15, 2015, Defendant moved to compel arbitration based on the 2015 MOA.

This Court should deny Defendant's motion for the following reasons.  *First*, the 2015 MOA requires as conditions to its formation ratification by the Union and Defendant as well as approval from the New York City Human Resources Administration ("HRA").  Defendant has provided no evidence that these conditions have been met and that a valid contact has even been formed.  The agreement is therefore unenforceable.

1

*Second*, the 2014 MOA does not provide a basis to compel arbitration. The state court previously ruled that it could not compel arbitration based on the 2014 MOA because the 2014 MOA does not require employees asserting wage claims to arbitrate their claims. That ruling is the law of the case. The 2014 MOA therefore is not a basis to compel arbitration.

*Third*, even if Defendant ultimately establishes ratification and approval of the 2015 MOA, 2015 MOA is unenforceable for four reasons. First, binding Supreme Court and Second Circuit precedent prevents a court from enforcing an arbitration provision in a collective bargaining agreement that waives the judicial forum for wage claims. Second, Plaintiffs' claims would not be effectively vindicated if Plaintiffs were forced to use the MOA arbitration provision because of the prohibitively high costs of mediation and arbitration. Third, since this case was initiated as a class action lawsuit, Defendant's attempts to communicate with the class members through the unsupervised union ratification process are improper and renders the arbitration provision unenforceable. Lastly, the NLRB is currently reviewing the enforceability of the arbitration provision, and the Court should decline to determine the enforceability of the arbitration provision until the NLRB has had a chance to move for injunctive relief.

*Finally*, the arbitration provision in the 2015 MOA is prospective and does not short-circuit this lawsuit, which was filed 9 months before the arbitration provision came into effect. The Union has expressly stated its intent that the 2015 MOA, along with the arbitration clause, have only prospective effect. In addition, the language of the arbitration provision and the 2015 MOA as a whole indicates that Defendant and the Union always intended for the arbitration provision to be prospective only.

For these reasons, the Court should deny Defendant's motion to compel arbitration.

## STATEMENT OF FACTS

### A.  Factual Background of This Case and Plaintiffs' Initial Complaint.

Plaintiffs are home care aides employed by Defendant to care for disabled and elderly individuals in and around New York City.  (See, Plaintiffs' Amended Complaint ¶15 attached as **Exhibit 1** to the Declaration of Michael Taubenfeld, Esq.).  Plaintiffs typically work 24-hour shifts, caring for their charges day and night, and often working as much as 120 hours a week.

Although Plaintiffs normally work 24-hour shifts, Defendant generally pay them for a maximum of 12 hours of work per day.  Defendant pays Plaintiffs at a rate of $10.00 per hour for their weekday hours and $11.10 for their weekend hours, plus a per diem rate of $16.95 when they work a 24-hour shift.  (**Exhibit 1**, Amended Compl. ¶¶ 44,46,49)  Until recently, Defendant never paid Plaintiffs time-and-a-half for their overtime hours and Defendant continues to deny Plaintiffs spread-of-hours payments even though Plaintiffs work a spread-of-hours of more than 10 hours a day.  Nor does Defendant provide Plaintiffs with proper wage statements. (**Exhibit 1**, Amended Compl. ¶¶ 55,73)

In response to these systematic violations, on March 11, 2015, Plaintiffs brought this action individually and on behalf of approximately 1,000 home care aides in the Supreme Court of the State of New York against Defendant for failure to pay under the NYLL (1) minimum wages, (2) overtime wages, (3) spread-of-hours wages, (4) straight time wages; (5) mandatory training hours; and (6) for failure to provide a proper wage statement.  In addition, since Defendant regularly failed to pay Plaintiffs for each hour they worked, Plaintiffs also asserted claims on a representative basis for violations of the NY Home Care Worker Wage Parity Act, N.Y. Public Health Law § 3614-c ("Wage Parity Act"), and the Fair Wages for New

Yorkers Act ("Living Wage Law"), Administrative Code for the City of New York § 6-109, both of which required Defendant to pay Plaintiffs a set wage of up to $10 an hour for each hour Plaintiffs worked.  Because Defendant entered into contracts with the HRA requiring it to pay Plaintiffs in accordance with the Wage Parity Act and Living Wage Law, and Defendant failed to pay Plaintiffs in accordance with those laws, Plaintiffs also asserted claims as third-party beneficiaries of those contracts.  Finally, Plaintiffs also alleged on a representative basis that Defendant was unjustly enriched by its failure to pay Plaintiffs in accordance with those laws.

**B. The Dispute Resolution Procedure Created by the Collective Bargaining Agreement and the 2014 Memorandum of Agreement.**

On and about August 8, 2012, Defendant and the Union entered into a Collective Bargaining Agreement.  <u>See</u>, Defendant's **Exhibit 2**.  The CBA created a Grievance and Arbitration Procedure governing "any dispute between the Union (on its behalf and/or on behalf of any Employee) with the Employer *involving the proper application, interpretation, or compliance with the specific written provisions of the [CBA]* based on facts and circumstances occurring during the term of [CBA]."  **Exhibit 2**, CBA, Article XXV, ¶1 (emphasis added).  The CBA also sets up a specific grievance procedure, including mandatory arbitration, with which the Union must comply if it wishes to bring a claim under the CBA.  The Grievance and Arbitration Procedure does not require any employee to file a grievance for any claim not arising out of the CBA.

Subsequently, on and about June 6, 2014, the Union and Defendant entered into a Memorandum of Agreement ("2014 MOA").  <u>See</u>, Defendant's **Exhibit 3**.  Among other things, the 2014 MOA slightly expanded the CBA's Grievance and Arbitration Procedure.  The 2014 MOA required the parties to submit to mandatory arbitration only if: the Union subsequently claims that the 2014 MOA is not compliant with the Wage Parity Act (¶22); Defendant

4

temporarily lacks funds to comply with the 2014 MOA and cannot make payments (¶23); or the parties are unable to agree on an expanded Grievance and Arbitration Procedure in a subsequent MOA that would cover claims under federal and state law (¶24).  Defendant offered no evidence in the state court that the 2014 MOA had been ratified by the Union membership.

### C.  Defendant's Prior Failed Attempt to Compel Arbitration Before the State Court.

On June 5, 2015, Defendant filed a motion to dismiss Plaintiff's Complaint and/or compel arbitration of their claims.[1]  Specifically, Defendant alleged that the 2014 MOA required Plaintiffs to submit their claims to mandatory arbitration.  The state court denied Defendant's motion, finding that it "lacks merit."  (See, State Court Decision, dated September 9, 2015, p. 10, attached as **Exhibit 2** to the Taubenfeld Decl.)  Particularly, the state court held that 2014 MOA did not "clearly and unmistakably" require Plaintiffs or Defendant's employees to submit to arbitration.   Instead, the 2014 MOA only required arbitration when the (1) Defendant temporarily lacked the funds to comply with the 2014 MOA; (2) the Union asserted that a term of the 2014 MOA failed to comply with the Wage Parity Act; or (3) the parties were unable to negotiate a revised alternative dispute procedure.  (Plaintiffs' **Exhibit 2**, Order, at pp. 11-12).  The state court also rejected Defendant's argument that Plaintiffs' claims arising out of the Wage Parity Act must specifically be arbitrated, noting that Plaintiffs' claims under Wage Parity Act are not a "term" of the MOA.  (Plaintiffs' **Exhibit 2**, Order, at pp. 12-13).  The state court therefore denied Defendant's motion to compel arbitration.

### D.  The 2015 MOA.

Having failed in their initial attempt to compel arbitration, Defendant entered into negotiations with the Union to revise the CBA and 2014 MOA's dispute and grievance

---

[1] Defendant's motion made an additional seven (7) separate arguments for dismissal, each of which the state court rejected.  Because Defendant has only moved now to compel arbitration, Defendant's arguments in their original motion are not relevant to this motion.

procedure.  On and about December 7, 2015, Defendant and the Union entered into a new MOA (the "2015 MOA") that revised and expanded the dispute resolution procedure in place under the CBA and the MOA.  <u>See</u>, Defendant's **Exhibit 4**.

Pursuant to the 2015 MOA, to bring a claim for violation of one of the covered statutes, a worker must file a grievance within the statute of limitations applicable to the covered statutes.  If the grievance is not resolved at that initial stage, the Union or the individual worker must request mandatory mediation before Martin F. Sheinman.  Defendant's **Exhibit 4**, p. 9, ¶2.  If mediation fails, the individual or the Union must make a demand for binding arbitration within 30 days of the conclusion of the mediation.  Martin F. Sheinman is also the designated arbitrator.  Defendant's **Exhibit 4**, pp. 9-10, ¶3.  If the Union refuses to pursue a grievance to the mediation or arbitration stage, the individual worker may do so but he or she must do so individually; a worker is explicitly prohibited from proceeding on a class or collective action basis.  In addition, the individual worker must bear half of the mediator's and arbitrator's fees, although the employee may be reimbursed for the fees of the arbitrator if the arbitrator finds that Defendant violated any of the Covered Statutes.  Defendant's **Exhibit 4**, p. 10, ¶4.

By its terms, the 2015 MOA is effective as of December 1, 2015 subject to "ratification by the Union and its membership and by the Board Of Directors of [Defendant]" and "approval by the New York City Human Resources Administration."  Defendant's **Exhibit 4**, pp. 10-11, ¶¶1-2.  To date, the 2015 MOA has not been ratified by the Union membership nor does it appear to have been approved by HRA.

### E.  Defendant's Attempt to Enforce the 2015 MOA and the NLRB Process.

Even though the MOA had not been ratified by the Union membership or approved by HRA, on December 8, 2015, Defendant requested the arbitrator to exercise

jurisdiction over all of Plaintiffs' claims in this lawsuit.  Defendant's **Exhibit 5**.  On December 11, 2015, the Union responded that the 2015 MOA <u>is not</u> retroactive and therefore the arbitrator has no jurisdiction over the claims in this lawsuit.  (<u>See</u>, Letter from Union to Martin F. Scheinman, Esq., dated December 11, 2015, attached as **Exhibit 3** to the <u>Taubenfeld Decl.</u>) The arbitrator has not yet issued a decision on whether he has jurisdiction over this case.

On December 8, 2015 Defendant removed this case to federal court and a week later filed the instant motion to compel arbitration based on the 2015 MOA.  On December 28, 2015, Plaintiff Chan filed a Charge with the NLRB against the Union requesting injunctive relief to prevent the Union from seeking ratification of the 2015 MOA.  The Charge is currently before the Regional Director for consideration.  On December 28, 2015, the Court granted Plaintiffs' request to extend their deadline to oppose this motion to January 15, 2016.

## ARGUMENT

### POINT I

### HAVING NOT BEEN RATIFIED, THE 2015 MOA HAS NOT BEEN FORMED AND CANNOT BE A BASIS FOR COMPELLING ARBITRATION

**A.  Defendant Has Not Proven That the 2015 MOA Has Been Ratified by the Union and Defendant and Approved by HRA.**

Defendant requests that the Court compel Plaintiffs to proceed via arbitration based on the 2015 MOA.  The 2015 MOA, however, is not in effect.  Therefore the Court cannot compel Plaintiffs to arbitrate based on it.

**1.  This Court Must Determine Whether the CBA Was Ever Formed.**

Before compelling arbitration, the FAA requires the Court to be "satisfied that the making of an agreement to arbitrate . . . is not in issue."  9 U.S.C. §4.  Absent an agreement to

arbitrate the Court has no basis to compel arbitration.  Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 301 (2010) ("It is . . . well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide.") citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 n. 1 (2006); Unique Woodworking, Inc. v. New York City Dist. Council of Carpenters' Pension Fund, No. 07 CIV. 1951 (WCC), 2007 WL 4267632, at *4 (S.D.N.Y. Nov. 30, 2007).

A party may challenge the formation of an arbitration agreement by challenging the formation of the contract containing the arbitration clause.  Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d 396, 406 n. 5 (2d Cir. 2009) (noting that "questions about whether a contract was ever made . . . are presumptively to be decided by the court even *without* a specific challenge to the agreement to arbitrate") (emphasis in original); Granite, 561 U.S. at 301 (court could decide challenge to CBA based on ratification date).  As one judge in this District noted, the "Supreme Court has made it crystal clear that whenever a party contests the existence or the enforceability of an arbitration agreement, the court must resolve the disagreement."  Dedon GmbH v. Janus et Cie, No. 10 CIV. 04541 CM, 2010 WL 4227309, at *7 (S.D.N.Y. Oct. 19, 2010) (McMahon, J.) aff'd, 411 F. App'x 361 (2d Cir. 2011); Les Telecommunications d'Haiti S.A.M. v. Cine, No. 13-CV-6462, 2014 WL 2655451, at *6 (E.D.N.Y. June 13, 2014) (noting that the "enforceability of the parties' purported agreement to arbitrate hinges, in the first place, on the validity of the [underlying agreement].")  When a party challenges the existence of an enforceable arbitration provision, the strong federal presumption of arbitrability does not apply.  Applied Energetics, Inc. v. NewOak Capital Markets, LLC, 645 F.3d 522, 526 (2d Cir. 2011) (noting that "while doubts concerning the scope of an arbitration clause should be resolved in

favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made.")

Because, as will be shown below, the 2015 MOA has not been ratified and therefore has not yet been formed, the Court must reject Defendants' motion to compel arbitration.  Adams v. Suozzi, 433 F.3d 220, 227 (2d Cir. 2005).

## 2.   The 2015 MOA Has Not Been Ratified.

The 2015 MOA is not effective because the parties have not satisfied the conditions precedent to its formation.  Because an agreement to arbitrate is a contract, it is governed by "state-law principles."  Adams, 433 F.3d at 227.  Under New York law, "when there is a condition precedent to the formation or existence of the contract itself *no contract arises* unless and until the condition occurs."  Id. (quotations omitted but emphasis in the original) citing Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co., 86 N.Y.2d 685, 690, 660 N.E.2d 415, 418 (1995).  Adams is particularly instructive.  In Adams, the defendant and a particular union entered into a CBA that by its own terms did not come into effect until two conditions precedent had been met.  The Second Circuit held that the CBA had not yet been formed because the conditions precedent had not been satisfied.  It further held that the district court's denial of the motion to compel was warranted.

Here, the 2015 MOA will be effective only after it has been (1) ratified by the Union and its membership; and (2) ratified by the Defendant's Board of Directors, and (3) approved by the New York City Human Resources Administration."  Defendant's **Exhibit 4**, pp. 10-11, ¶¶1-2.  A party moving to compel arbitration has the burden of establishing that an agreement exists, and in determining the motion, the court applies a standard similar to that applicable for a motion for summary judgment.  Hines v. Overstock.com, Inc., 380 F. App'x 22,

24 (2d Cir. 2010) (party moving to compel arbitration bears the burden of establishing that a CBA has been formed) citing Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003). Defendant, therefore, bears the burden of establishing that the 2015 MOA has been formed and that all three conditions precedent have been met. Defendant, however, has failed to provide any evidence that each of the three conditions has been met. Accordingly, the Court should deny Defendant's motion to compel based on the 2015 MOA.[2]

### B. The Court Should Also Deny Defendant's Motion to Compel Arbitration Based on the 2014 MOA.

While the 2015 MOA provides no basis for compelling arbitration, Defendant also asserts that the 2014 MOA provides an independent basis for compelling arbitration. The Court should also decline to compel arbitration based on the 2014 MOA because the state court's decision is the law of the case. In addition, even if the Court determines that the law of the case doctrine is not applicable, the Court should deny Defendant's motion because the 2014 MOA did not require Plaintiffs to submit their claims to binding arbitration.

#### 1. The State Court's Decision Refusing to Compel Arbitration Based On the 2014 MOA is the Law of the Case and Should be Followed.

The state court's denial of Defendant's motion to compel arbitration based on the 2014 MOA is the law of the case and this Court should follow that decision.[3] "The law of the case doctrine generally applies to decisions made by a state court prior to removal to federal district court." Torah Soft Ltd. v. Drosnin, 224 F. Supp. 2d 704, 710 (S.D.N.Y. 2002); see also

---

[2] In the event the Court is unsure whether the 2015 MOA has been formed, it should hold a bench trial under 9 U.S.C.A. § 4 (West) to determine whether Defendant and the Union have complied with the 2015 MOA's ratification requirements and HRA has approved it.   Barbieri v. K-Sea Transp. Corp., No. 105CV04950-EVN-MDG, 2006 WL 3751215, at *9 (E.D.N.Y. Dec. 19, 2006)

[3] Although Defendant does not explicitly request that the Court compel arbitration based on the 2014 MOA, it states that "the 2014 MOA also required Plaintiffs to arbitrate claims arising under state and federal law generally and claims pertaining to the Wage Parity Act specifically. Thus, Plaintiffs' claims were arbitrable even under the prior agreement." (Def. Memo at 9, n. 4)

Firestone v. Berrios, 42 F. Supp. 3d 403, 412 (E.D.N.Y. 2013). The law of the case doctrine applies because "the orders entered by the state court are treated as though they had been entered by the federal court." Firestone, 42 F. Supp. at 412 quoting Nasso v. Seagal, 263 F. Supp. 2d 596, 608 (E.D.N.Y. 2003). Accordingly, the law of the case doctrine applies to the state court decision denying Defendant's motion to compel arbitration.

In addition, none of the exceptions to the law of the case doctrine applies. Under the law of the case doctrine, "a court may review a matter previously decided in any of three circumstances: (1) where there has been an intervening change of controlling law, (2) where new evidence has become available, or (3) where there is a need to correct a clear error or prevent manifest injustice." Torah Soft, 224 F. Supp. at 710. Here, none of these circumstances applies. Defendant argues in a footnote that the law of the case doctrine does not apply because Plaintiffs amended their complaint to add FLSA claims and also because Defendant and the Union entered into the 2015 MOA. Defendant does not explain how the law of the case doctrine is affected by Plaintiff's act of amending the complaint. In addition, the 2015 MOA is irrelevant to the state court's previous decision regarding the 2014 MOA. Accordingly, the Court should apply the law of the case doctrine and deny Defendant's motion to compel arbitration based on the 2014 MOA.

### 2. Even If Law of the Case Does Not Apply, the 2014 MOA Does Not Provide a Basis for Compelling Arbitration.

If the Court declines to apply the law of the case doctrine, it should deny Defendant's motion to compel based on the 2014 MOA for the same reasons as the state court. A CBA cannot preclude a lawsuit concerning individual statutory rights unless the arbitration clause in the agreement is clear and unmistakable that the parties intended to arbitrate such individual claims. Rogers v. New York Univ., 220 F.3d 73, 76 (2d Cir. 2000) abrogated on other grounds by 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 129 S. Ct. 1456, 173 L. Ed. 2d 398

(2009).  A waiver is only clear and unmistakable when either (1) the arbitration clause contains an explicit provision whereby an employee specifically agrees to submit all causes of action arising out of his employment to arbitration; or (2) where the arbitration clause specifically references or incorporates a statute into the agreement to arbitrate disputes.  Id.

The 2014 MOA, however, only required the Union and Defendant to proceed to arbitration when (1) the Union claims that the 2014 MOA is not compliant with the Wage Parity Act (Defendant's **Exhibit 3**, ¶22); (2) Defendant temporarily lacks funds to comply with the 2014 MOA (¶23); or (3) the parties are unable to agree on a more expansive Grievance and Arbitration Procedure governing claims under federal and state law (¶24).  Plaintiffs' claims in this suit do not fall within any of these categories.  The MOA therefore does not require any of Plaintiffs' causes of action to be arbitrated.  McLean v. Garage Mgmt. Corp., No. 10 CIV. 3950 DLC, 2011 WL 1143003, at *5 (S.D.N.Y. Mar. 29, 2011) (Cote, J.) (declining to compel arbitration when "[t]he CBA does not provide that all federal causes of action arising from the plaintiffs employment will be subject to arbitration, nor does it explicitly incorporate the requirements of the FLSA or NYLL.") (internal quotations omitted).  Finally, Defendant has not established the 2014 MOA has been ratified by the Union and is an enforceable agreement.  Accordingly, the Court should decline to compel arbitration based on the 2014 MOA.

**POINT II**

**EVEN IF THE 2015 MOA IS EVENTUALLY RATIFIED, THE COURT SHOULD NOT ENFORCE IT.**

If the 2015 MOA is, eventually, ratified, the Court should decline to enforce it for four independent reasons: First, binding precedent prevents a union from waiving an employee's right to proceed with his wage claims in court.  Second, the 2015 MOA imposes significant costs

on Plaintiffs and prevents them from effectively vindicating their wage claims. Third, Defendant's attempt to have the Union membership ratify the draconian arbitration provision constitutes an improper communication with potential class members that warrants finding the arbitration provision unenforceable. Fourth, the 2015 MOA is the subject of an on-going NLRB unfair labor practice charge that could render the MOA unenforceable.

### A. Binding Precedent Precludes a CBA from Waiving an Employee's Right to Assert FLSA Claims in Federal Court.

Even if the Court the 2015 MOA is ultimately ratified and becomes enforceable, the Court should decline to enforce the arbitration clause as it applies to Plaintiffs' claims in this suit because Plaintiffs cannot be forced by a CBA to arbitrate their wage claims. As the Second Circuit has noted, employees may assert their wage claims in court even if a collective bargaining agreement purports to force them to arbitrate.

In Tran v. Alphonse Hotel, 54 F.3d 115 (2d Cir. 1995), the Second Circuit reversed a district court decision requiring that a plaintiff arbitrate his FLSA claims. The Second Circuit followed the Supreme Court's decision in Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 745, 101 S. Ct. 1437, 1447, 67 L. Ed. 2d 641 (1981), which explicitly held that FLSA claims "are not waivable" because Congress intended "to give individual employees the right to bring their minimum-wage claims under the FLSA in court, and because these congressionally granted FLSA rights are best protected in a judicial rather than in an arbitral forum." Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 745, 101 S. Ct. 1437, 1447, 67 L. Ed. 2d 641 (1981). Other courts since Tran have held similarly. Alderman v. 21 Club Inc., 733 F. Supp. 2d 461, 470 (S.D.N.Y. 2010)(Griesa, J.) ("Courts have held that plaintiffs covered by a collective bargaining agreement that required arbitration of any disputes concerning the interpretation or application of the agreement are entitled to pursue their

individual statutory rights under the FLSA in federal court."); <u>Manning v. Boston Med. Ctr. Corp.</u>, 725 F.3d 34, 52 (1st Cir. 2013) (noting that "the state of the law is somewhat unsettled as to whether a FLSA claim may <i>ever</i> be waived by a CBA") (emphasis in original).  In addition, in <u>Tran</u>, the Second Circuit noted that as "the wage hour claims of plaintiff are concerned, plaintiff was not required to seek grievance and arbitration . . . ." <u>Tran</u>, 54 F.3d at 118.  This outcome comports with the special status afforded to wage-and-hour claims.  <u>See, e.g.</u>, <u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d 199, 207 (2d Cir. 2015) (finding that the FLSA is a uniquely protective statute that has as its primary remedial purposes "to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees") <u>citing</u> <u>Brooklyn Sav. Bank v. O'Niel</u>, 234 U.S. 697, 706-707 (1945).  Because all of Plaintiffs' claims are wage-and-hour claims, the Court should hold that Plaintiffs need not arbitrate their claims.

### B. The 2015 MOA Precludes Plaintiffs From Effectively Vindicating Their Rights Under the FLSA and NYLL and its Arbitration Provision Should not be Enforced.

In the event the Court declines to adopt the reasoning in <u>Tran</u>, it should still hold that the 2015 MOA's arbitration provision is unenforceable because it prevents Plaintiffs from protecting their rights.   A court should decline to enforce an arbitration agreement that effectively prevents an employee from vindicating his rights.  <u>Green Tree Fin. Corp.-Alabama v. Randolph</u>, 531 U.S. 79, 90, 121 S. Ct. 513, 522, 148 L. Ed. 2d 373 (2000) (noting that "[i]t may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum."); <u>Am. Exp. Co. v. Italian Colors Rest.</u>, 133 S. Ct. 2304, 2310-11, 186 L. Ed. 2d 417 (2013) (the effective vindication doctrine "would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable").

14

Here, the 2015 MOA requires that Plaintiffs split with Defendant the costs of the mediation and arbitration. Although the Second Circuit has not clarified the scope of the "effective vindication" doctrine, two Circuits of the Court of Appeals have determined that a mandatory fee splitting provision renders an arbitration agreement unenforceable. Nesbitt v. FCNH, Inc., No. 14-1502, 2016 WL 53816 (10th Cir. Jan. 5, 2016) (in FLSA case holding that fee splitting provision rendered arbitration clause unenforceable); Morrison v. Circuit City Stores, Inc., 317 F.3d 646 (6th Cir. 2003) (same in Title VII case); see also Blair v. Scott Specialty Gases, 283 F.3d 595, 610 (3d Cir. 2002) (remanding case to district court to determine if due to mandatory fee splitting provision "resort to arbitration would deny [the plaintiff] a forum to vindicate her statutory rights.")

Given Plaintiffs' limited resources, the cost-splitting provision effectively prevents them from vindicating their claims. Plaintiffs are extremely low wage workers, generally earning between $300 and $450 a week and generally incurring household expenses that exceed their earnings. Chan Decl. at ¶¶10-14; Chen Decl. at ¶¶9-11; Xie Decl. at ¶¶7-9. Mr. Scheinman, the designated mediator/arbitrator, charges a minimum of $6,050 for a single day of mandatory mediation. If mediation is unsuccessful, Plaintiffs will have to attend an arbitration before Mr. Scheinman for which he charges a minimum of $2,700 per day. At a minimum, then, Mr. Scheinman will charge no less than $8,750 for the mediation and a single day arbitration, of which each Plaintiff would have to pay $4,375 to pursue her claim. Taubenfeld Decl. ¶¶5-6. These costs make it virtually impossible for Plaintiffs to arbitrate a claim, especially compared to the $210 filing fee that Plaintiffs paid to initiate this case. Given Plaintiffs' minimal earnings, a $4,375 fee would exceed multiple months of pay, and Plaintiffs would likely opt to not pursue their claims rather incur such prohibitively high costs. E.E.O.C. v. Rappaport, Hertz, Cherson &

Rosenthal, P.C., 448 F. Supp. 2d 458, 464 (E.D.N.Y. 2006) (declining to compel arbitration because the $6,000 to $11,250 in "costs would be prohibitively expensive in comparison to the filing fee she is required to pay to commence a proceeding in federal court"); Morrison, 317 F.3d at 669 (holding the $1,622 filing fee cost prohibitive); Nesbitt, 2016 WL 53816 (holding prohibitive arbitration costs between "$2,320.50 and $12,487.50"). Nor can Plaintiffs pool their resources to pay the mediator/arbitrator fees by filing a request for class arbitration because the arbitration clause prohibits Plaintiffs from arbitrating collectively or as a class. Defendant's **Exhibit 4**, p. 10, ¶4. Each individual worker must file her own demand for mediation and arbitration and each must pay a minimum of $4,375 to have his or her claim considered.

It does not matter that the 2015 MOA permits Plaintiffs to recover some of their costs of the arbitration if they are successful. First, the 2015 MOA appears to only permit the arbitrator to require that Defendant pay "the fees and costs of the arbitrator." Defendant's **Exhibit 4**, p. 10, ¶4. The 2015 MOA is ambiguous as to whether the arbitrator may award to Plaintiffs their attorneys' fees, which the FLSA expressly provides.[4]   29 U.S.C. § 216(b). Arbitration agreements that deprive plaintiffs of substantive rights cannot be enforced. Morrison, 317 F.3d at 672 (arbitration agreement capping damages under Title VII unenforceable); Nesbitt, 2016 WL 53816, at *7 (arbitration agreement unenforceable since it was "ambiguous regarding the availability of a fee award for [plaintiff]" because the arbitration clause was internally inconsistent as whether fees were awardable). In addition, the 2015 MOA does not permit Plaintiffs to recover mediation costs, which will cost each Plaintiff more than $3,000. Finally, the arbitration provision does not state when the mediation and arbitration costs

---

[4] Although in Paragraph 1, the 2015 MOA states that the arbitrator "shall apply appropriate law and shall award all statutory remedies and penalties, including attorneys' fees," in paragraph 4, the paragraph that expressly authorizes Plaintiffs to individually arbitrate their claims, only permits the arbitrator to award "the fees and costs of the arbitrator."

16

must be paid, and if Plaintiffs are required to make these payments before the mediation and arbitration begin, they will not be able to afford to pay these expenses up front.  As a result of these restrictions, Plaintiffs are unlikely to risk their "scarce resources in the hopes of an uncertain benefit" and is not enforceable.  Morrison, 317 F.3d at 670.

Accordingly, the Court should find that 2015 MOA's arbitration clause is unenforceable because it effectively prevents Plaintiffs from vindicating their rights.[5]

### C. Defendant's Communications Through the Union with Potential Class Members Render the Arbitration Provision of the 2015 MOA Unenforceable.

Even if the 2015 MOA is ultimately ratified, the arbitration provision should also be held unenforceable because it would be the product of improper communications with Plaintiffs and other putative class members.

Rule 23 of the Federal Rules of Civil Procedure grants the Court broad supervisory authority in class action suits.  Fed. R. Civ. P. 23.  That authority has been interpreted to include supervision over a defendant's communications with putative class members.  See, Gulf Oil Co. v. Bernard, 452 U.S. 89, 100, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981);  In re Currency Conversion Fee Antitrust Litig., 361 F.Supp.2d 237, 252 (S.D.N.Y. 2005); Ralph Oldsmobile, Inc. v. General Motors Corp., No. 99 Civ. 4567 (AGS), 2001 WL 1035132, at  (S.D.N.Y. Sept. 7, 2001) ("Although Gulf Oil concerned communications between counsel for the named plaintiff and potential class members, its rationale has been found to apply to communications between defendants and potential class members as well.").  While not all communications must undergo judicial scrutiny, "[c]ommunications that threaten the choice of remedies available to class members are subject to a district court's supervision."  In re Currency

---

[5] The effective vindication doctrine applies to both federal and state causes of action.  Damato v. Time Warner Cable, Inc., No. 13-CV-994 ARR RML, 2013 WL 3968765, at *10 (E.D.N.Y. July 31, 2013) (citing cases).

Conversion Fee Antitrust Litig., 361 F.Supp. 2d at 252 citing In re Sch. Asbestos Litig., 842 F.2d 671, 683 (3d Cir. 1998); see also Agerbrink v. Model Service LLC, No. 14 Civ. 7841(JPO)(JCF), 2015 WL 6473005, at *3 (S.D.N.Y. Oct. 27, 2015) ("judicial intervention is warranted when communications pose a 'serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally'"). "Indeed, a district court's authority under Rule 23(d) is not limited to communications that actually mislead or otherwise threaten to create confusion, but extends to communications that interfere with the proper administration of a class action or those that abuse the rights of members of the class." Id. at 252-253.  Inherently coercive communications – defined by courts as communications that have the purpose of altering the status of pending litigation, interfering with participation by potential class members, or misleading putative class members by failing to reveal how some proposed transaction might affect members' rights in litigation – will be found to be improper without judicial authorization and may result in an arbitration agreement being held unenforceable.  Id. at 253; Wu v. Pearson Educ. Inc., Nos. 09 Civ. 6557(RJH)(JCF), 10 Civ. 6537 (RJH)(JCF), 2011 WL 2314778, at *6 (S.D.N.Y. Jun. 7, 2011) (examining cases).

   In this case, Defendant has deliberately attempted to thwart Rule 23's protections by using the collective bargaining process as a shield against judicial scrutiny.  By integrating the arbitration requirement into a memorandum of agreement with the Union, Defendant seeks to bind putative class members to a mandatory arbitration process that clearly implicates the statutory claims asserted in this case. Fully aware that the arbitration provisions of the 2015 MOA would directly affect class members' rights in the pending litigation if interpreted to require class members to submit to arbitration any portion of their grievances relating to Defendant's violations of the federal and state labor laws, Defendant actively engaged in

unsupervised negotiations with the Union for the express purpose of depriving class members of their statutory rights.  The suspicious nature of CPC's actions is confirmed by the fact that it has sought to apply retroactively the dispute resolution procedures articulated in the 2015 MOA to Plaintiffs' claims – before the MOA has even been properly formed and despite the Union's position that the 2015 MOA has no retroactive effect.  See, Defendants' **Exhibit 5**.

       Courts have declined to enforce arbitration provisions when the provisions were obtained during ongoing litigation and involved unsupervised communications with class members.  See, In re Currency Conversion Fee Antitrust Litigation, 361 F.Supp.2d at 253.  Here Defendant has masked its communications by hiding behind the Union and its process.   However, the arbitration agreement constitutes the type of unsupervised, inherently coercive communication that should render the arbitration agreement unenforceable.  A finding of unenforceability in this case would be consistent with decisions from courts around the country refusing to compel arbitration because of improper communications to putative class members.   See, e.g., Billingsley v. Citi Trends, Inc., 560 Fed.Appx. 914 (11th Cir. 2014) (affirming denial of motion to compel arbitration where arbitration agreement was imposed after filing but before certification of FLSA collective action); Jimenez v. Menzies Aviation, Case No. 15-cv-02392-WHO, 2015 WL 4914727 (N.D. Cal. 2015) (holding that proposed ADR agreement sent to putative class members was unenforceable because it was an improper communication with class members); O'Connor v. Uber; No. 13-cv-03826, 2013 WL6407583 (N.D. Cal. Dec. 23, 2015) (discussing arbitration agreements that fail to advise putative class members about the lawsuit or did not offer a reasonable opportunity to opt out);  Carnegie v. H&R Block, Inc., 687 N.Y.S.2d 528, 531 (N.Y. Sup. Ct. 1999) (holding that communications that are "coercive, misleading, or

an attempt to affect a class member's decision to participate in the litigation" must not be permitted).

CPC has intentionally attempted to bind putative class members to a modified CBA that it believes would strip those class members of their right to a day in court on the statutory claims asserted in this case. Accordingly, the Court should find that the arbitration clause of the 2015 MOA is unenforceable because it was obtained by Defendant during the pendency of this litigation and not under this Court's supervision.

**D. The Court Should Decline to Compel Arbitration While National Labor Relations Board Reviews the Propriety of the 2015 MOA.**

Even if the 2015 MOA is eventually ratified and the Court finds it otherwise enforceable, the Court should refrain from compelling arbitration because the MOA is the subject of a National Labor Relations Board unfair labor practice charge that could render the 2015 MOA unenforceable. As the Court will recall, Defendant filed a motion to compel arbitration before the state court based on the 2014 MOA, which the state court denied. In response to the state court's decision to deny its motion to compel arbitration, Defendant and the Union then conspired to sign the 2015 MOA to prevent Plaintiffs from proceeding with this action. In response to Defendant and the Union's actions, Plaintiff Chan requested that the NLRB pursue injunctive relief in federal court to prevent the Union from ratifying the 2015 MOA, and the NLRB is currently reviewing Plaintiff Chan's complaint. The Court should defer ruling on the motion to compel arbitration until the NLRB decides whether to pursue injunctive relief.

20

<u>**POINT III**</u>

**EVEN IF THE 2015 MOA IS RATIFIED
AND IS ENFORCEABLE IT ONLY
APPLIES TO CLAIMS ARISING ON
OR AFTER DECEMBER 1, 2015.**

**A. The 2015 MOA is Prospective.**

Even if, at some point in the future the 2015 MOA were ratified, and this Court were to determine that it is enforceable, the MOA on its face only applies to violations arising on or after December 1, 2015, the effective date of the MOA.  Accordingly, any order compelling arbitration must be limited to claims arising on or after December 1, 2015.

An arbitration clause of a new agreement applies to claims predating the agreement only if the arbitration clause "is susceptible of an interpretation that covers the asserted dispute."  <u>Peerless Importers, Inc. v. Wine, Liquor & Distillery Workers Union Local One</u>, 903 F.2d 924, 928 (2d Cir. 1990).  In determining the scope of arbitration agreement, a court should review the "contract's language, the timing of its execution, and the conduct of the parties."  <u>Holick v. Cellular Sales of New York, LLC</u>, 802 F.3d 391, 398 (2d Cir. 2015) (internal quotations omitted) <u>citing</u> <u>Mehler v. Terminix Int'l Co. L.P.</u>, 205 F.3d 44, 49 (2d Cir. 2000).

That the arbitration clause does not cover claims that predate the 2015 MOA, is evident from the fact that the Union, when it entered into the 2015 MOA, did not intend for the arbitration clause to be retroactive.  When interpreting an arbitration agreement, "as with any other contract, the parties' intentions control."  <u>Holick</u>, 802 F.3d at 395 <u>quoting</u> <u>Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.</u>, 559 U.S. 662, 682, 130 S. Ct. 1758, 1774, 176 L. Ed. 2d 605 (2010); <u>Ottley v. Sheepshead Nursing Home</u>, 688 F.2d 883, 886 (2d Cir. 1982) ("the arbitrability of any dispute turns in the first instance on the arbitration clause of the contract. This is so because our duty is to implement the intent of the parties.")  The Union clearly articulated its

intent only a few days after the 2015 MOA was executed that the arbitration clause is not retroactive and does not cover this lawsuit.  (See, Plaintiffs' **Exhibit 3**, December 11, 2015 Letter from the Union to Martin Scheinman).  Since the parties' intent was not for the arbitration clause to be retroactive, the Court should find that the clause is not retroactive.

The Union's interpretation is fully supported by the language of the MOA.  The 2015 MOA does not explicitly state that it covers claims predating the 2015 MOA even though Defendant and the Union could easily have included such language.  A court "can glean intent not only from what *is* said but what *is not* said."  Thomas v. Carnival Corp., 573 F.3d 1113, 1119 (11th Cir. 2009) (emphasis added).  Accordingly, the Court can infer from the 2015 MOA's arbitration clause's silence on retroactivity that it is not retroactive.  Id. (holding that an arbitration clause was not retroactive because "if the parties had intended retroactivity, they would have explicitly said so."); Sec. Watch, Inc. v. Sentinel Sys., Inc., 176 F.3d 369, 374 (6th Cir. 1999) ("Had the parties intended to apply the new ADR processes to disputes arising under the previous contracts, we believe they would have done so explicitly."); Russell v. Citigroup, Inc, 748 F.3d 655, 680 (6th Cir. 2014) (noting that the "common expectations of the parties" was that the arbitration agreement would apply prospectively); Hendrick v. Brown & Root, Inc., 50 F. Supp. 2d 527, 535 (E.D. Va. 1999) (holding that an employer may not "insulate itself from pre-existing claims" without saying "so in explicit terms").

Furthermore, the language of the arbitration clause in the 2015 MOA indicates that it applies prospectively only.  Crucially, the preamble of the arbitration clause notes that the arbitration clause's purpose "is to ensure compliance with all federal, state, and local wage hour law and wage parity statutes" and "the uniform administration and interpretation of *this Agreement* in connection with federal, state, and local wage-hour and wage parity statutes . . ."

Defendant's **Exhibit 4**, p. 9, ¶ 1 (emphasis added).   Ensuring "compliance with . . . law[s] and . . . [statutes]" and "uniform administration and interpretation of [an] agreement" are plainly future looking terms.  It makes little sense to attempt to ensure *past* compliance with laws.  In addition, it is impossible to ensure past uniform administration and interpretation of an agreement that only became effective on December 1, 2015.  The terminology used in the prefatory sentences of the arbitration clause is therefore clearly forward-looking and does not indicate any intention for the clause to apply retroactively.

The main text of the arbitration clause also indicates prospective application only. The arbitration clause states that it covers "all claims . . . *asserting* violations of or *arising* under . . . ." Defendant's **Exhibit 4**, p. 9, ¶1 (emphasis added).  Terms such as "asserting" and "arising" are present tense and indicate that the arbitration clause only covers future claims.  Russell, 748 F.3d at 679 ("The use of the present-tense 'arise,' rather than the past-tense 'arose' or present-perfect 'have arisen,' suggests that the contract governs only disputes that begin—that arise—in the present or future."); Hendric, 50 F. Supp. 2d at 535 ("arises from" denotes future claims). Given the arbitration clause's use forward-looking terminology, the clause is clearly not retroactive.

Similarly, the 2015 MOA explicitly states that it is effective as of December 1, 2015 and the rest of the 2015 MOA is plainly prospective only.   Absent a clear statement to the contrary, a party is not obligated "to arbitrate acts that occurred before the effective date of that agreement."  Long v. Fid. Water Sys., Inc., No. C-97-20118 RMW, 2000 WL 989914, at *3 (N.D. Cal. May 26, 2000).  Accordingly, because the 2015 MOA's effective date is December 1, 2015, its arbitration clause does not cover claims preceding that date.

Finally, reading the arbitration provision as retroactive would effectively wipe out an entire year of Plaintiffs' and the classes' claims.  By its terms, the arbitration agreement requires workers to file a grievance within the statute of limitations of the covered statutes. Even if the arbitration provision were ratified tomorrow, and all class members filed individual grievances immediately, the furthest back their claims could go would be January 16, 2010.  But the claims of the class in this action are tolled back to March 11, 2009.    It is plainly unreasonable to read the arbitration agreement in a way that wipes out currently viable claims as such a reading would render the agreement facially unenforceable.   Accordingly, the only reasonable reading of the arbitration agreement is that it is prosepective in effect only.[6]

**B.  Defendant's Cases Are Not on Point.**

The cases cited by Defendant do not change this analysis.   The retroactivity analysis in Arrigo v. Blue Fish Commodities, Inc., is dicta because the plaintiff had waived his claim that the arbitration agreement was not retroactive.  408 F. App'x 480, 481 (2d Cir. 2011). In addition, the arbitration clause in Arrigo did not contain a specific effective date, nor did it use language such as "arising" that indicates only prospective application.  Instead, the arbitration clause stated that the "Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim *arose* . . ." Arrigo v. Blue Fish Commodities, Inc., 704 F. Supp. 2d 299, 301 (S.D.N.Y. 2010) (emphasis added) aff'd, 408 F. App'x 480 (2d Cir. 2011). Finally, the arbitration clause in Arrigo did include language about "complying" with laws.

Similarly, the arbitration provision of the collective bargaining agreement in Duraku v. Tishman Speyer Properties, Inc. was broader than the clause in the 2015 MOA.  In

---

[6] In addition, if the Court finds that the 2015 MOA's arbitration provision is retroactive and compels Plaintiffs to arbitrate, because this is a potential class action, the Court should provide Plaintiffs leave to amend their Complaint to add as a Plaintiff an employee who ceased working for Defendant before December 1, 2015 and is therefore not bound by the 2015 MOA.

Duraku, the clause stated that "*[w]henever* it is claimed that an employer has violated the no discrimination clause (including claims based in statute) of one of the CBAs, ... the matter *shall* be submitted to mediation." Duraku v. Tishman Speyer Properties, Inc., 714 F. Supp. 2d 470, 474 (S.D.N.Y. 2010) (Cote, J.) (emphasis in original).  The use of the word "whenever" implies that any dispute must be mediated and arbitrated.  Finally, in Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 98 (2d Cir. 1999), the plaintiff brought the lawsuit years after signing the agreement containing the arbitration clause.  In this case, Plaintiffs initiated this suit long before the Union and Defendant entered into the 2015 MOA.  In addition, unlike the 2015 MOA, the arbitration clause in Smith did not contain clear language indicating that the clause was prospective only.

*                        *                        *

Accordingly, the Court should hold that the 2015 MOA's arbitration clause is prospective only and deny Defendant's motion to compel arbitration.

**CONCLUSION**

For the foregoing reasons, Plaintiffs request that Defendant's Motion to compel arbitration be denied in its entirety and that the Court grant Plaintiffs all available relief in connection with opposing the instant motion.

Dated: New York, New York
     January 15, 2016

By:    Respectfully Submitted

       _____/s/_____
       Michael Taubenfeld
       SERRINS FISHER LLP

       David A. Colodny
       Carmela Huang
       URBAN JUSTICE CENTER

       Edward Tuddenham
       *Attorneys for Plaintiffs*

25