**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| LAI CHAN, HUI CHEN, AND XUE XIE, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>CHINESE-AMERICAN PLANNING COUNCIL HOME ATTENDANT PROGRAM, INC.,<br><br>*Defendant.* | Case No. 15-CV-09605 (KBF) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

I.   INTRODUCTION ............................................................................................................1

II.  PROCEDURAL HISTORY ..............................................................................................2

III. DEFENDANT'S SUBVERSION OF THIS COURT'S AUTHORITY TO REGULATE COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS AND THE CLASS PROCESS ....................................................................................................3

IV.  THE COURT SHOULD EXERCISE ITS AUTHORITY PURSUANT TO FED. R. CIV. P. 23 WITH RESPECT TO ANY AND ALL COMMUNICATIONS PERTAINING TO THE 2015 MOA OR THAT MIGHT OTHERWISE POSE A THREAT TO THE FAIRNESS OF THE LITIGATION AND ADMINISTRATION OF JUSTICE ..................................................................................................................6

  A. Legal Standard. ..........................................................................................................6

  B. Defendant's Direct and Indirect Communications with Plaintiffs Merit Swift Judicial Intervention. ................................................................................................10

  C. An Order Enjoining Defendant, And By Extension, the Union, From Seeking Ratification of the 2015 MOA Until the Court Can Supervise the Process Meets the Test under *Gulf Oil*. .................................................................................12

V.   THE COURT SHOULD EXERCISE ITS AUTHORITY PURSUANT TO RULE 65(d)(2)(C) AND IMMEDIATELY ISSUE A TEMPORARY RESTRAINING ORDER STOPPING THE UNION FROM SEEKING RATIFICATION OF THE 2015 MOA ......................................................................................................................13

  A. Legal Standard. ........................................................................................................13

  B. Plaintiffs Will Suffer Immediate and Irreparable Injury If the Status Quo Is Not Maintained. ........................................................................................................13

VI.  REQUESTED RELIEF....................................................................................................15

VII. CONCLUSION................................................................................................................15

# **TABLE OF AUTHORITIES**

**CASES:**

Agerbrink v. Model Service LLC, No. 14 Civ. 7841(JPO)(JCF), 2015 WL 6473005 (S.D.N.Y. Oct. 27, 2015) ...................................................................................................7

Carnegie v. H&R Block, Inc., 687 N.Y.S.2d 528 (N.Y. Sup. Ct. 1999) ............................9

Dodona I, LLC v. Goldman, Sachs & Co., 300 F.R.D. 182 (S.D.N.Y. 2014)................7,11

Friedman v. Intervet Inc., 730 F.Supp.2d 758 (N.D. Ohio 2010).......................................8

Garcia v. Yonkers Sc. Distr., 561 F.3d 97 (2d Cir. 2009) .................................................13

Gulf Oil Co. v. Bernard, 452 U.S. 89, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981)..........6,12

Goody v. Jefferson County, No. CV-09-437, 2010 WL 3834205 (D.Idaho Sept. 23, 2010) .................................................................................................................................11

In re Currency Conversion Fee Antitrust Litig., 361 F.Supp.2d 237 (S.D.N.Y. 2005) ...............................................................................................................6,8,9,11,12

Impervious Paint Indus., Inc., v. Ashland Oil, 508 F. Supp. 720, 723 (W.D. Ky. 1981) ....9

Jimenez v. Menzies Aviation, Case No. 15-cv-02392-WHO, 2015 WL 4914727 (N.D. Cal. 2015).................................................................................................................9

Mendez v. Enecon Northeast Applied Polymer Systems, Inc., No 14 Civ. 6736, 2015 WL 4249219, (E.D.N.Y. July 13, 2015) ...................................................................................7

Mastrio v. Sebelius, 768 F.3d 116 (2d Cir. 2014).............................................................13

O'Connor v. Uber; No. 13-cv-03826, 2013 WL6407583 (N.D. Cal. Dec. 23, 2015) ..................................................................................................................9,11,12,14

Pan Am. World Airways, Inc. v. Flight Eng'rs' Int'l Ass'n, PAA Chapter, 306 F.2d 840 (2d Cir. 1962)....................................................................................................................13

Ralph Oldsmobile, Inc. v. General Motors Corp., No. 99 Civ. 4567 (AGS), 2001 WL 1035132 (S.D.N.Y. Sept. 7, 2001) ................................................................................6,7,8,12,14

Sorrentino v. ASN Roosevelt Center LLC, 584 F.Supp.2d 529 (S.D.N.Y. 2008) ............12

Westerfield v. Quizno's Franchise Co., LLC, No. 06-c-1210, 2007 WL 1062200 (E.D. Wisc. Apr. 6, 2007) .............................................................................................................8

**OTHER AUTHORITIES:**

Statutes:

Fair Labor Standards Act of 1938, as amended

    29 U.S.C. § 201 ................................................................................2,4.8,14

Wage Parity Act

    NY Home Care Worker Wage Parity Act, N.Y. Public Health Law § 3614-c........2

Fair Wages for New Yorkers Act

    Administrative Code for the City of New York § 6-109 ........................................2

New York Labor Law ...............................................................................................2,4

Federal Rules:

    Rule 23 ................................................................................................5,6,7,16

    Rule 65 ................................................................................................13

Treatise:

    11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure ...13

**I.   INTRODUCTION**

Plaintiffs seek a temporary restraining order to stop Defendant and 1199SEIU United Healthcare Workers East from communicating with putative class members about a new mandatory arbitration clause that would affect class members' rights to participate in this lawsuit, until the Court creates a plan to supervise communications with class members concerning the arbitration clause. A TRO is required because the Union has scheduled a meeting and ratification vote for **January 21, 2016 at 6:00 PM**, and has ignored Plaintiffs' request to delay the vote pending Court supervision.

As explained in greater detail below, after the initiation of Plaintiffs' suit against Defendant, Defendant negotiated with 1199SEIU United Healthcare Workers East (hereafter "1199" or "Union") to create a new Alternative Dispute Resolution ("ADR") provision that would affect Plaintiffs' and putative class members' ability to participate in this action. By slipping the ADR proposal into a new collective bargaining agreement to prevent class members from participating in this proceeding, Defendant threatens to undermine the Court's authority to supervise the class process.

Continued communications with the class members by 1199 or Defendant in connection with the ratification of the ADR clause, and the actual ratification vote, create the risk of irreparable injury to Plaintiffs and class members. Plaintiffs therefore seek emergency relief pursuant to Rules 23 and 65 of the Federal Rules of Civil Procedure to restrain Defendant and the Union from communicating with class members, and from holding a ratification vote, until the Court has had an opportunity to fully consider what supervision of these processes is appropriate.

## II. PROCEDURAL HISTORY

On March 11, 2015, Plaintiffs Lai Chan, Hui Chen, and Xue Xie, on behalf of themselves and other home care workers employed by the Chinese American Planning Council Home Attendant Program, Inc. ("CPC"), filed a class action complaint in New York Supreme Court alleging that CPC violated the New York Labor Law, the New York Home Care Workers' Wage Parity Act, and the Fair Wages for New Yorkers Act. In particular, the Complaint alleged that Defendants violated these statutes by having a policy and practice of paying Plaintiffs and class members an hourly rate of either $10 or $11.10 for only 12 of the 24 hours worked on each work shift, failing to pay overtime for all hours worked in excess of 40 hours each week, failing to pay "spread of hours" pay, failing to pay for all hours spent in trainings mandated by CPC, and for failing to provide full and accurate paystubs. *See* Complaint, attached to Declaration of David A. Colodny ("Colodny Decl.") at Ex. A.

On June 5, 2015, CPC moved to dismiss and/or compel arbitration in the Supreme Court. In support of its motion, Defendant argued, *inter alia*, that a Memorandum of Agreement entered into by Defendant and the Union on June 6, 2014 (the "2014 MOA") required that Plaintiffs' claims be submitted to mandatory arbitration. *See* Doc. No. 7-3 (2014 MOA); Motion to Dismiss, attached to Colodny Decl. at Ex. B. Defendant also argued that the class action complaint should be dismissed on various other grounds, including that Plaintiffs had failed to state a claim. On September 9, 2015, the Honorable Carol Edmead, Justice of the Supreme Court of the State of New York, County of New York, concluded that the 2014 MOA did not compel arbitration of Plaintiffs' claims because the 2014 MOA did not clearly indicate an agreement to arbitrate the claims raised in Plaintiffs' complaint. *See* Supreme Court Order at 12 (Sept. 9, 2015), attached to Colodny Decl. at Ex. C. Judge Edmead also rejected Defendant's other arguments, finding that

Plaintiffs had indeed stated claims for relief.  *Id*. at 13-19.  Accordingly, Judge Edmead denied Defendant's motion to dismiss and/or compel arbitration.

On November 9, 2015, Plaintiffs amended their class action complaint to include claims alleging that Defendant failed to pay Plaintiffs and other putative class members overtime as required by newly amended regulations to the federal Fair Labor Standards Act.  *See* Amended Complaint, attached to Colodny Decl. at Ex. D.  Defendant removed the action to this Court on December 8, 2015, and then filed a motion to compel arbitration one week later, again attempting to prevent Plaintiffs and other class members from vindicating their rights in Court.  In their second motion to compel arbitration, Defendant relies largely on a Memorandum of Agreement purportedly entered into by Defendant and the Union in early December 2015 ("2015 MOA").  Doc. No. 6 (memo of law in support of motion to compel arbitration).  Plaintiffs filed their opposition on January 15, 2016, Doc. No. 17 (memo of law in opposition), in which they point out that the motion must be denied because, *inter alia*, the purported 2015 MOA is not effective until it has been ratified by the Union membership, an event that had not yet occurred.[1]  Defendant has not yet filed a reply.

### III. DEFENDANT'S SUBVERSION OF THIS COURT'S AUTHORITY TO REGULATE COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS AND THE CLASS PROCESS

Defendant, dissatisfied with the Supreme Court's holding that the 2014 MOA did not require Plaintiffs to arbitrate their claims, is engaging in an attempt to improperly create a new ADR agreement that would purportedly require arbitration of claims pending in this action and

---

[1] By its terms, the 2015 MOA is effective as of December 1, 2015 subject to "ratification by the Union and its membership and by the Board Of Directors of [Defendant]" and "approval by the New York City Human Resources Administration."  Doc. No. 7-4 at pp. 10-11, ¶¶1-2.

waive the Plaintiffs' rights to participate in a class action.[2] This fact is undisputed as the 2015 MOA is the basis for Defendant's motion to compel arbitration. Incredibly, Defendant takes the position that the 2015 MOA would not only compel arbitration of claims arising after the 2015 MOA's effective date, which by its own terms is December 1, 2015, but that it also would compel arbitration of claims arising before the 2015 MOA's effective date. Doc. No. 6. Although Plaintiffs believe the arbitration clause, if it ever becomes effective, is properly read to apply only to claims arising after the December 1, 2015 effective date, this Court has not yet ruled on the meaning of that clause. Notably, 1199 also takes the position that the arbitration clause in the 2015 MOA does not apply to claims arising before the December 1, 2015 effective date or to this lawsuit. *See* Doc. No. 18-3 (Letter from Union to Martin F. Scheinman, Esq., (Dec. 11, 2015)). To date, the 2015 MOA has not been ratified by the Union membership nor does it appear to have been approved by the New York City Human Resources Administration ("HRA").[4]

Since around the time that the 2015 MOA was signed, the Union has begun communicating with the Plaintiffs, putative class members and other Union members about the terms of the MOA and the ratification process. As early as at least December 4, 2015, Defendant began requiring employees, including two of the Plaintiffs, to attend mandatory trainings wherein a Union official spoke for approximately one hour to the attendants. At the trainings held on

---

[2] The full ADR clause is at Doc. No. 7-4 at pp. 9-10.

[4] Plaintiffs have argued in this lawsuit that Defendant was obligated to pay them under the FLSA and NYLL for all 24 hours of their 24 hour shift. But even under Defendant's position that it was only required to pay Plaintiffs for 13 hours, it is worth noting that the 2015 MOA does not require CPC to pay employees working 24-hour shifts for more than thirteen hours of their shift, creating the risk that putative class members' rights to be paid properly for their work under various federal and state statutes – the same violations that are the basis for this action – will continue. Though the MOA requires employees to report when they fail to get uninterrupted sleep and three hours of meal times, nowhere does the MOA require compensation for those hours, or any other of the eleven work hours for which class members have not been compensated. Instead, the MOA simply requires payment for "at least" thirteen hours.

December 4, 2015 and December 15, 2015, a Union official told the workers that a new union contract would give employees working 24-hour shifts "extra" pay.[5] Ratification was not discussed by the Union official at the December 4, 2015 training. No mention of the 2015 MOA's new alternative dispute resolution procedures was made at either training. Doc. No. 15 at ¶ 22 (Declaration of Lai Chan); Doc. No. 16 at ¶ 19 (Declaration of Hui Chen).[6]

The Union then began sending postcards to Plaintiffs about a meeting to be held on January 21, 2016 at which there will be a ratification vote. First, shortly after January 8, 2016, Plaintiffs and other CPC employees received postcards from the Union notifying them of an "important 1199SEIU home care workers meeting." Besides providing the date, time and location of the meeting, the postcard only stated "new contract." Colodny Decl. at Ex. E. Then, on or about January 15, 2016, Plaintiffs and other CPC employees received postcards that were virtually identical to the January 8, 2016 postcards. Colodny Decl. at Ex. F. However, in place of "new contract" the phrases "contract ratification" and "update of health benefits" were substituted. To date, the Plaintiffs have not received any information from their Union or CPC regarding the existence or meaning of the ADR clause, and how it would impact Plaintiffs' rights to participate in this action.

On January 12, 2016, Plaintiffs' counsel sent a letter to the Union's counsel informing the Union of Plaintiffs' intent to file the instant motion requesting supervision pursuant to Rule 23 and

---

[5] At the December 4, 2015 meeting, the Union official said that workers would begin receiving three hours "extra" pay for three hours of meals in the daytime and five hours "extra" pay for overnight work if the worker was required to care for a patient during the night. The official stated that the "extra" pay would not be automatic and described the steps that needed to be followed in order to receive the pay. Doc. No. 15 at ¶ 21 (Declaration of Lai Chan). Upon information and belief, at the December 15, 2015 meeting, the Union official said that workers would receive four "extra" hours of pay if they worked a 24-hour shift, retroactive to November 2015.

[6] Upon information and belief, the Union did not discuss the arbitration clause at the December 15 meeting.

requesting that the Union cease taking steps to move forward with ratification of the 2015 MOA. *See* Letter from Urban Justice Center to Levy Ratner (Jan. 12, 2016), attached to Colodny Decl. at Ex. G. In spite of the concerns set forth in that letter, the Union has not offered to postpone a ratification vote.

In sum, Defendant has used the Union to negotiate a new ADR provision during the pendency of this action that it is already arguing should compel the arbitration of Plaintiffs' claims, and by extension, prevent the certification of a class of similarly situated Plaintiffs. It has, in effect, attempted to use the Union to do what it could not have done directly with Plaintiffs and putative class members without Court supervision – enter into agreements that would prevent participation in this suit.

### IV. THE COURT SHOULD EXERCISE ITS AUTHORITY PURSUANT TO FED. R. CIV. P. 23 WITH RESPECT TO ANY AND ALL COMMUNICATIONS PERTAINING TO THE 2015 MOA OR THAT MIGHT OTHERWISE POSE A THREAT TO THE FAIRNESS OF THE LITIGATION AND ADMINISTRATION OF JUSTICE

#### A. Legal Standard

Rule 23 of the Federal Rules of Civil Procedure grants the Court broad supervisory authority in class action suits. That authority has been interpreted to include supervision over a defendant's communications with putative class members. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, (1981); *In re Currency Conversion Fee Antitrust Litig.*, 361 F.Supp.2d 237, 252 (S.D.N.Y. 2005); *Ralph Oldsmobile, Inc. v. General Motors Corp.*, No. 99 Civ. 4567 (AGS), 2001 WL 1035132, at (S.D.N.Y. Sept. 7, 2001) ("Although Gulf Oil concerned communications between counsel for the named plaintiff and potential class members, its rationale has been found to apply to communications between defendants and potential class members as well."). While not all communications must undergo judicial scrutiny, "[c]ommunications that threaten the choice of remedies available to class members are subject to a district court's supervision." *In re Currency*

*Conversion Fee Antitrust Litig.,* 361 F.Supp. 2d at 252 (citing *In re Sch. Asbestos Litig.,* 842 F.2d 671, 683 (3d Cir. 1998)); *see also Agerbrink v. Model Service LLC*, No. 14 Civ. 7841(JPO)(JCF), 2015 WL 6473005, at *3 (S.D.N.Y. Oct. 27, 2015) ("judicial intervention is warranted when communications pose a 'serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally'"). "Indeed, a district court's authority under Rule 23(d) is not limited to communications that actually mislead or otherwise threaten to create confusion, but extends to communications that interfere with the proper administration of a class action or those that abuse the rights of members of the class." *Id.* at 252-253.

"The Court's supervisory authority exists even before a class is certified…. The primary purpose in supervising communications is to ensure that potential members receive accurate and impartial information regarding the status, purposes and effects of the class action." *Mendez v. Enecon Northeast Applied Polymer Systems, Inc.*, No 14 Civ. 6736, 2015 WL 4249219, at *1 (E.D.N.Y. July 13, 2015) (internal citations and quotations omitted). *See also Ralph Oldsmobile*, 2001 WL 1035132, at *2 ("[A] Court's power to restrict communications between parties and potential class members . . . appl[ies] even before a class is certified."). The overarching concern is protecting the integrity of the proceeding and preventing injustice:

> Courts use Rule 23(d) to limit communications to protect class members from misleading communications from the parties or their counsel, because misleading communications to class members concerning the litigation pose a serious threat to the fairness of the litigation process, the adequacy of representation and the administrations of justice generally. . . . The Court's primary purpose in supervising communications is thus to ensure that potential class members receive accurate and impartial information regarding the status, purposes and effects of the class action.

*Dodona I, LLC v. Goldman, Sachs & Co*., 300 F.R.D. 182, 184 (S.D.N.Y. 2014) (internal citations and quotations omitted).

Courts have paid particular attention when the parties are in an ongoing relationship that may lead to coercion over the class members.  "[A] unilateral communications scheme . . . is rife with potential for coercion."  *Ralph Oldsmobile,* 2001 WL 1035132, at *3.  *See also Currency Conversion Fee Antitrust Litig.*, 361 F.Supp.2d at 253 ("If the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive.").

Courts are also especially protective when a defendant's communications with class members may affect the class member's ability to participate in a pending class action.  "[W]hen a defendant contacts putative class members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization."  *Currency Conversion Fee Antitrust Litig.*, 361 F.Supp.2d at 253.  *See also Friedman v. Intervet Inc.*, 730 F.Supp.2d 758, 765-66 (N.D. Ohio 2010) ("defendant's failure to notify putative class members of this litigation before obtaining settlements and releases from them . . . constituted a misleading communication meriting action on my part"); *Westerfield v. Quizno's Franchise Co., LLC*, No. 06-c-1210, 2007 WL 1062200, at * 3 (E.D. Wisc. Apr. 6, 2007) ("there exists a potential for unknowing waivers resulting from a lack of information . . . A risk exists, then, that franchisees might sign the releases without knowing the implications vis-à-vis rights they might assert in the instant action."); *Ralph Oldsmobile*, No. 99 Civ. 4567, 2001 WL 1035132, at *4 (supervision of communications that include proposed release due to the "potential unknowing waivers").

Where arbitration clauses have been obtained during the pendency of a class action without court supervision, they have been struck down.  *See Billingsley v. Citi Trends, Inc*., 560 Fed.Appx. 914 (11th Cir. 2014) (affirming denial of motion to compel arbitration where arbitration agreement was imposed after filing but before certification of FLSA collective action).  *Currency Conversion*

*Fee Antitrust Litig.,* 361 F.Supp.2d at 253-54 ("defendants' unsupervised communications were improper because they sought to eliminate putative class members' rights in the litigation. Thus, this Court holds that those arbitration clauses may not be enforced because [defendants] added them, without notice, after this litigation commenced."); *Carnegie v. H&R Block, Inc.*, 180 Misc.2d 67, 73 (Sup. Ct., N.Y. County 1999) ("general support for arbitration does not extinguish putative and actual class members' right to be informed before being required to waive their right to participate in this class action in favor of arbitration").[8]  These types of communications have been subject to such a severe remedy because they have been deemed by courts as inherently coercive communications that have as their purpose altering the status of pending litigation, interfering with participation by potential class members, and/or misleading putative class members by failing to reveal how some proposed transaction might affect members' rights in litigation. *Currency Conversion Fee Antitrust Litig.,* 361 F.Supp. 2d at 253; *Wu v. Pearson Educ. Inc.*, Nos. 09 Civ. 6557(RJH)(JCF), 10 Civ. 6537 (RJH)(JCF), 2011 WL 2314778, at *6 (S.D.N.Y. Jun. 7, 2011) (examining cases).

---

[8] *See also Jimenez v. Menzies Aviation*, No. 15-cv-02392-WHO, 2015 WL 4914727 (N.D. Cal. Aug. 17, 2015) (holding that proposed ADR agreement sent to putative class members was unenforceable because it was an improper communication with class members); *O'Connor v. Uber*; Cases Nos. 13-cv-03826-EMC, 14-cv-5200-EMC, 15-CV-0262-EMC, 2015 WL 9460292, at *4 (N.D. Cal. Dec. 23, 2015)  (Courts have invalidated arbitration agreements that fail to advise putative class members about the lawsuit or did not offer a reasonable opportunity to opt out.); *Carnegie v. H&R Block, Inc.*, 687 N.Y.S.2d 528, 531 (N.Y. Sup. Ct. 1999) (If the proposed communication is "coercive, misleading, or an attempt to affect a class member's decision to participate in the litigation," it must not be permitted.); *Impervious Paint Indus., Inc., v. Ashland Oil*, 508 F. Supp. 720, 723 (W.D. Ky. 1981) (The decision to join in or opt out of a class action must rest solely with each individual putative class member, and it is the duty of the courts to ensure these decisions are "free and unfettered.").

### B. Defendant's Direct and Indirect Communications with Plaintiffs Merit Swift Judicial Intervention

While previous agreements between Defendant and the Union were silent as to what, if any, ratification process would be required for the agreements to have full effect, the 2015 MOA, by its own terms, requires ratification by the Union.

Defendant knew, or should have known, that prior to a ratification vote, the Union would be required to provide some information about the content of the 2015 MOA to at least some of CPC's employees. Moreover, Defendant could rely on the Union to provide information that would generally characterize the 2015 MOA in a manner that would lead to ratification of the contract since the Union would not have signed the MOA if it had no intention to obtain ratification.

In fact, whether by design or by negligence, the Union's communications with Plaintiffs and other, potential class members regarding the 2015 MOA have thus far been misleading and confusing. At none of the trainings Defendant has required its employees to attend where the Union has presented on topics relating to the 2015 MOA has the Union official mentioned the alternative dispute resolution procedures. Consequently, no information about how the arbitration agreement might affect Plaintiffs' and other class members' rights in this litigation was provided. Plaintiffs and other class members have received no explanation of the prohibitively expensive costs of the alternative dispute resolution process or its prohibition of class actions. Further, because the Union is not in agreement with Defendant about the scope of the arbitration agreement and whether it has retroactive effect, the Union did not and could not have provided accurate information about the agreement's potential effect on this litigation.

Upon information and belief, in accordance with the constitution and bylaws of the Union, the 2015 MOA may be ratified by a simple majority of whichever members chose to or were able to participate in the vote.[11]  In this manner, the 2015 MOA could be ratified and fully effectuated by CPC employees who are not members of the proposed class in this litigation.  Moreover, the three votes of the class representatives have almost no weight compared to the votes of the thousands of Union members who may be totally unaware of this proceeding and how the new ADR provision affects their rights in this proceeding.   In fact, two of the three named Plaintiffs are unable to attend the ratification vote scheduled for Thursday, January 21, 2016 because, like most members of the putative class, they are working a 24-hour shift for Defendant.

Defendant has masked its communications with class members by hiding behind the Union, and the 2015 MOA constitutes the type of unsupervised, misleading, and abusive communications that justify strong judicial intervention.  *See, e.g., O'Connor v. Uber*, Cases Nos. 13-cv-03826-EMC, 14-cv-5200-EMC, 15-CV-0262-EMC, 2015 WL 9460292, at *4 (N.D. Cal. Dec. 23, 2015); *Dodona I, LLC v. Goldman, Sachs & Co.,* 300 F.R.D. at 184; *Currency Conversion Fee Antitrust Litig.,* 361 F.Supp. 2d at 254. Defendant's seeking and implementation of the 2015 MOA may even be properly characterized as coercive, and may justify a finding that the 2015 MOA be unenforceable if it is ever ratified.  *See Wu v. Pearson Educ. Inc.,* 2011 WL 2314778, at *6 ("a communication may be coercive where the defendant interferes with participation by potential class members in the lawsuit or misleads them by failing to reveal how some proposed transaction might affect their rights in the litigation.") (citing *Goody v. Jefferson County*, No. CV-09-437, 2010 WL 3834205, at *3 (D.Idaho Sept. 23, 2010); *In re Currency Conversion Fee Antitrust Litig.,*

---

[11] The Union has ignored Plaintiffs' counsel's request to provide a copy of the bylaws and other documents governing the ratification process.  *See* Colodny Decl. at Ex. G (request to Union for documents).

361 F.Supp. 2d at 254). Certainly, had Defendant contacted Plaintiffs and other class members directly to obtain class waivers and arbitration agreements, its actions would have resulted in the agreements being found unenforceable. *See, e.g., In re Currency Conversion Fee Antitrust Litig.*, 361 F.Supp. 2d at 254; *O'Connor v. Uber*, 2015 WL 9460292, at *4. That Defendant has used the Union to obtain such agreements is no better, and arguably worse, as those directly affected by the MOA don't have an individual right to reject or even opt-out of the agreement.

### C. An Order Enjoining Defendant, And By Extension, the Union, From Seeking Ratification of the 2015 MOA Until the Court Can Supervise the Process Meets the Test under *Gulf Oil*

A district court order supervising communications "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil*, 452 U.S. at 101. Further, "such a weighing – identifying the potential abuses being addressed – should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id*. at 102. "Where there is a relationship that is inherently coercive, the court does not need to make a finding that a particular abuse has occurred. The court, however, must still require a clear record of threatened abuses." *Ralph Oldsmobile*, 2001 WL 1035132, at *3; *Sorrentino v. ASN Roosevelt Center LLC*, 584 F.Supp.2d 529, 533 (S.D.N.Y. 2008) (same).

By negotiating an arbitration agreement during the pendency of litigation and deliberately attempting to insulate the agreement from judicial scrutiny by exploiting the collective bargaining process and the Union's power over the Plaintiffs' and other class members, Defendant has created a clear and obvious need for strong and swift judicial intervention.

**V.     THE COURT SHOULD EXERCISE ITS AUTHORITY PURSUANT TO RULE 65(d)(2)(C) AND IMMEDIATELY ISSUE A TEMPORARY RESTRAINING ORDER STOPPING THE UNION FROM SEEKING RATIFICATION OF THE 2015 MOA**

    **A.  Legal Standard**

The Second Circuit has held that, "[w]ith respect to TROs, we have stated that [t]he standard for granting [such relief] requires a finding of immediate and irreparable injury but not a specific determination as to the merits…" *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014) (internal quotation marks omitted).  This is because "[t]he purpose of a temporary restraining order is to preserve an existing situation *in status quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Garcia v. Yonkers Sc. Distr.,* 561 F.3d 97, 107 (2d Cir. 2009)) (citing *Pan Am. World Airways, Inc. v. Flight Eng'rs' Int'l Ass'n, PAA Chapter*, 306 F.2d 840, 842 (2d Cir.1962); 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2951, at 253 (2d ed. 1995)).

    **B.  Plaintiffs Will Suffer Immediate and Irreparable Injury If the Status Quo Is Not Maintained**

Plaintiffs will suffer immediate and irreparable harm if this Court does not enjoin the Union from seeking ratification of the 2015 MOA and communicating with Plaintiffs and putative class members concerning the meaning of the 2015 MOA.  The irreparable injury could occur for several reasons.

First, Plaintiffs and the putative class members might be irreparably injured by voting to ratify a contract without full understanding of the ADR clause or its effect on their right to participate in this lawsuit.  Although Plaintiffs would still argue that the arbitration provision is unenforceable as they already have done in opposition to Defendant's motion to compel arbitration, there is no certainty that Plaintiffs will prevail.  This creates a risk that Plaintiffs' rights to participate in this lawsuit, and those of putative class members, will have been adversely

13

affected as a result of unsupervised communications that are misleading or deficient. *Cf. Ralph Oldsmobile*, 2001 WL 1035132, at * 4 (discussing the potential for unknowing waivers). Moreover, it may be impossible for this Court to obtain a full record of all the communications that led up to a ratification vote to determine whether the class members were properly informed of the meaning of the ADR provision.[13]

Second, even if this Court subsequently rules that the ADR provision is unenforceable,[14] putative class members may suffer irreparable injury because they may be told that the ratification of the 2015 MOA prohibits them from participating in this action. Those communications could dissuade class members from opting in to the FLSA collective action, if certified, and could also dissuade class members from participating in the opt-out class, if certified, to the extent that their participation is allowed.[15] *See Uber Technologies*, 2013 WL 6407583, at *6-7 (discussing risk of communications interfering with the pending class action). A corrective notice sent after the ratification vote might not cure these harms, as many class members might not read such a notice and instead rely on what they learn from the Union at the January 21 ratification meeting or other communications from the Union or Defendant.

---

[13] In order to establish a full record, the parties might need to engage in costly and time consuming discovery, including discovery of Defendant and Union officials concerning all of the communications made to class members concerning the 2015 MOA.

[14] Plaintiff has already established in its opposition to Defendant's motion to compel arbitration why the arbitration clause should be found to be unenforceable. In addition to the reasons cited therein, there remains a question of whether arbitration agreements that Defendant may obtain through a Union vote, but that are not agreed to individually and knowingly by the class representatives or putative class members, are enforceable. Prior precedent enforcing arbitration clauses negotiated by a Union did not involve agreements entered into during the pendency of litigation that might only affect some of the Union's membership.

[15] For example, class members may be required to participate in a damages phase of this proceeding if liability is found, and would be allowed to participate in a fairness hearing if the parties reach a proposed settlement.

Finally, as discussed in Plaintiffs' Opposition to Defendant's Motion to Compel, if ratified and found enforceable, the 2015 MOA's mandatory arbitration process would prevent Plaintiffs and others from effectively vindicating their rights by imposing on them prohibitively high arbitration costs. *See* Doc. 17 at Sec. II(B) (discussing effective vindication doctrine).

## VI.   REQUESTED RELIEF

This Court should enter an order temporarily restraining both the Defendant and the Union from communicating with Plaintiffs or putative class members about the 2015 MOA's ADR clause, including communications regarding ratification of the ADR portions of the 2015 MOA, until this Court has had an opportunity to supervise those communications with class members and ensure that they are fair and accurate. The Court should order the Union to submit for review by the Court the communications it plans to make with the class members regarding the effect of the ADR clause on participation by class members in this lawsuit, including the communications at the ratification meeting. Temporarily enjoining communications, including those aimed at obtaining ratification of the MOA ADR provisions, is particularly critical because there appears to be a fundamental disagreement between the Union and Defendant regarding the meaning and effect of the ADR provision, namely whether it is prospective or retrospective, and, it is Plaintiffs' view that communications with the class members cannot possibly fairly and accurately describe the effect the MOA ADR provisions will have on participation in this lawsuit if there is such a fundamental disagreement as to the meaning and scope of the ADR provision.

## VII.   CONCLUSION

In this instance, Defendant is deliberately exploiting the collective bargaining process in an attempt to evade judicial scrutiny. If swift judicial action is not taken by the Court enjoining both Defendant and the Union from attempting any further communications with Plaintiffs and

putative class members regarding the 2015 MOA, Defendant will have succeeded in using the Union to subvert the Court's duty and powers under Rule 23.  For the foregoing reasons, Plaintiffs request that the instant motion for judicial supervision and temporary restraint of the ratification process be granted.

Dated: New York, New York
January 19, 2016

>Respectfully submitted,
>
>/s/ David A. Colodny
>David A. Colodny
>Carmela Huang
>URBAN JUSTICE CENTER
>123 William Street, 16th Floor
>New York, NY 10038
>Telephone: (646) 602-5600
>Facsimile: (212) 533-4598
>
>SERRINS FISHER LLP
>Liane Fisher, Esq.
>Michael Taubenfeld, Esq.
>233 Broadway, Suite 2340
>New York, NY 10279
>Telephone: (212) 571-0700
>Facsimile: (212) 233-3801
>
>Edward Tuddenham, Esq.
>228 W. 137th St.
>New York, New York 10030
>Telephone: (212) 234-5953
>Facsimile: (512) 532-7780
>
>*Counsel for Plaintiffs*