UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LAI CHAN, HUI CHEN, and HUI XIE, individually and
on behalf of all others similarly situated,

                                                  Plaintiffs,      Case No. 15-cv-09605 (KBF)

                                  -against-

CHINESE-AMERICAN PLANNING COUNCIL HOME
ATTENDANT PROGRAM, INC.,

                                                  Defendant.
------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AGAINST NON-PARTY 1199SEIU UNITED HEALTHCARE WORKERS EAST

### INTRODUCTION

        1199SEIU, United Healthcare Workers East ("1199" or "Union") submits this memorandum of law in opposition to Plaintiffs' Motion for a Temporary Restraining Order prohibiting 1199 from conducting a ratification vote of the 2015-17 collective bargaining agreement ("2015 CBA") among its members employed by Defendant Chinese-American Planning Council Home Attendant Program, Inc. ("CPC" or "Defendant"). (Dkt. 21).

        1199 is neither a party to these proceedings, nor acting in concert with any party to these proceedings. See Decl. of Daniel J. Ratner ("Ratner Decl."), dated Jan. 20, 2016, at ¶ 1. 1199 is ratifying the CPC CBA in the normal course, and in conjunction with the ratification of almost identical CBAs at 60 other home care agencies employing approximately 75,000 1199-represented home care workers. Id. at ¶¶ 5, 11. This is the only home care contract where an issue has been raised. Id. at ¶ 11.

Plaintiffs only challenge the arbitration clause, which they assert will deprive them of their right to prosecute a class claim in federal court. The 2015 CBA primarily contains terms on wages and paid time off benefits, as well as critical contributions to the 1199SEIU National Benefit Fund for Home Care Employees, 1199SEIU Home Care Employees Pension Fund, and the 1199SEIU Home Care Industry Education Fund (collectively, "1199 Funds"). Id. at ¶12. This case concerns wage payments for workers assigned to 24-hour cases. Only approximately 8-10% of the CPC bargaining unit is affected by this lawsuit. Id. at ¶1. Thus, if this Court bars ratification, it will ultimately deprive the remaining 90-95% of the unit of their right to secure 2015 CBA terms. As we show below, ratifying the CBA will have no adverse consequences to Plaintiffs, but failure to ratify could have serious adverse consequences for all of the CPC members' health, pension, and education benefits. Id. at ¶13.

Below, we show that 1199 is not a person acting in concert with Defendant under Fed. R. Civ. P. 65(d)(2)(C). Moreover, under the Supreme Court's decisions in Air Line Pilots Assn. v. O'Neill, 499 U.S. 65 (1991), and in San Diego Bldg. Trades v. Garmon, 359 U.S. 236 (1959), this Court does not have the authority to grant Plaintiffs relief. Finally, there is no irreparable harm.

I.  **PLAINTIFFS' REQUEST THAT THE COURT ENTER A RESTRAINING ORDER AGAINST 1199, A NON-PARTY TO THIS LAWSUIT, EXCEEDS THE SCOPE OF THE COURT'S POWERS UNDER FED.R.CIV.P 65.**

Plaintiffs move the Court to enjoin non-party 1199 from holding a ratification vote on a recently-negotiated CBA. See Mot. for TRO (Dkt # 21-1). This vote is an internal union matter, over which the Defendant employer in this case has no control. The Plaintiffs' request is contrary to the general rule that the scope of the Court's power to grant injunctive relief is limited to the parties to the lawsuit. Doctor's Associates, Inc. v. Reinert & Duree, P.C., 191 F.3d

297, 302 (2d Cir.1999) ("[U]nless this case falls within an exception to the general principle that a court cannot 'make a decree which will bind any one but a party,' <u>Alemite Mfg. Corp. v. Staff</u>, 42 F.2d 832, 832 (2d Cir.1930) (L.Hand, J.), the injunctions entered by the district court were improper."). Fed. R. Civ. P. Rule 65(d)(2)(A) embodies this principle, and the exceptions found in (d)(2)(B) and (C) of Rule 65 are both limited and inapplicable to 1199.

A court's injunctive relief may extend to the officers, agents, servants and employees of a defendant, even though they are not parties to the lawsuit, Rule 65 (d)(2)(B), but 1199 is obviously none of these. The only other exception is for non-parties who "are in active concert or participation with parties or their agents" per Rule 65(d)(2)(C). But Plaintiffs cannot show that 1199 is either an "aider or abettor" of the defendant employer, or that it is "legally identified with it." <u>GMA Accessories, Inc. v. Eminent, Inc.</u>, No. 07 CIV. 3219 (LTS)(DF), 2008 WL 2355826, at *12-13 (S.D.N.Y. May 29, 2008) ("Rule 65(d) (2) of the Federal Rules of Civil Procedure is derived from the common law principle that a non-party may be held in civil contempt of a court order on the grounds that it either is legally identified with the party named in the order or aids and abets the party named in the order in its noncompliance.") The aiding and abetting prong applies to non-parties who assist the enjoined defendant in violating the Court's injunction – inapposite here – and a non-party is "legally identified" with a party only if their interests overlap sufficiently that the non-party's interests are protected by the party litigant. But here, 1199 is an independent actor whose interests are not represented by the Defendant employer. Because Rule 65(d) does not authorize jurisdiction over persons who act independently and whose rights have not been adjudicated, there is no basis to enjoin 1199. <u>Heyman v. Kline</u>, 444 F.2d 65, 65-66 (2d Cir.1971).

The fact that 1199 has a collective bargaining agreement with the Defendant is insufficient to meet this standard. Courts in the Second Circuit have repeatedly found the existence of ongoing business relationships, even contractual ones, insufficient to meet Rule 65 standards. Doctor's Associates, 197 F.3d at 305-06 (reversing injunction entered against non-party franchisees in lawsuit by franchisor); Gojo Industries, Inc. v. Innovative Biodefense, Inc., No. 15 Civ. 2946(PAC), 2015 WL 7019836 (S.D.N.Y. Nov. 12, 2015) (refusing to enjoin non-party distributors who sold defendant's products); Paramount Pictures Corp. v. Carol Pub. Group, Inc., 25 F.Supp.2d 372, 374 (S.D.N.Y.1998) (declining extension of injunction to non-party retailers and distributors of defendant publishing company). On Rule 65 grounds alone, the Court should deny the requested relief.

## II.   THE COURT DOES NOT HAVE JURISDICTION TO GRANT PLAINTIFFS' TRO MOTION

### A. Under the Supreme Court's O'Neill Standard, the Court Should Deny Plaintiffs' Motion.

The Court should not grant Plaintiffs' request to enjoin 1199 from ratifying the 2015 CBA because under well-settled federal labor law it does not have jurisdiction where 1199 allegedly violated its duty of fair representation and where Plaintiffs seek the same injunctive relief before the NLRB.

In Air Line Pilots Assn v. O'Neill, 499 U.S. 65 (1991), the Supreme Court reviewed the duty of fair representation standard in the context of a union's negotiation of a collective bargaining agreement. As here, a group of workers challenged a union's agreement claiming that the settlement discriminated against the group by effectively depriving them of the right to bid for jobs in a strike settlement situation. The O'Neill plaintiffs asked the court to invalidate the settlement and the ratification vote. Id. at 71 n. 3.

In rejecting their claims, the Supreme Court emphasized that ". . . Congress did not intend judicial review of a union's performance to permit the court to substitute its own view of the proper bargain for that reached by the Union." Id. at 78. The Supreme Court then articulated the standard that had to be met before a court can interfere with a union's negotiated settlement:

> For that reason, the final product of the bargaining process may constitute evidence of a breach of duty only if it can fairly be characterized as so far outside a 'wide range of reasonableness' (citation omitted), that it is wholly 'irrational' or 'arbitrary.'

Id. In 14 Penn Plaza LLC v. Pyett, 556 U.S. 247 (2009), the Supreme Court in upholding an arbitration clause covering employment-related discrimination claims, including claims brought under the ADEA, emphasized the well-established principal that it is not the place of the court to interfere in this bargained for exchange, and that such "[j]udicial nullification of contractual concessions . . . is contrary to fundamental policies of the National Labor Relations Act." Id. at 257 (citing NLRB v. Magnavox Co., 415 U.S. 322, 328 (1974)).

Here, Plaintiffs do not even assert that the arbitration clause is wholly irrational. They merely claim that it will make it harder for them to pursue their claims if they are required to proceed to arbitration. See Pls. Br. at 13-14 (Dkt. 22). They ask the Court to stop the ratification because they believe, in their individual cases, the clause is not in their interests and so they are trying to block its adoption. Factually, this is precisely the situation the Supreme Court confronted in O'Neill, where one group of workers wanted a court to block a clause that benefitted other workers. O'Neill, 499 U.S. at 71-73. And, for the same reasons the Supreme Court refused to block their action, this Court should deny Plaintiffs' TRO motion.

Moreover, there is simply no way the Court could find the 2015 CBA irrational. The agreement successfully addressed wage and benefit terms critical to the membership, which even the Plaintiffs do not contest. And, the arbitration clause guarantees the membership full federal

1-173-00003: 10630991

5

court litigation rights while quickly prosecuting their claims in arbitration. This is a unique clause fully protecting the membership.

### B. Under the Garmon Preemption Doctrine the Court Should Defer to the NLRB

To the extent that Plaintiffs assert that the arbitration provision is unlawful under the NLRA, because Plaintiffs are allegedly denied their Section 7 rights to pursue class claims (only the Union can proceed on class claims), the dispute is preempted by the NLRB. See Ratner Decl. ¶16, 19 and at Ex. B.

Congress created primary authority in the National Labor Relations Board to determine whether there have been violations of the federal Act. Thus, the Supreme Court explained:

> Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specifically and specially constituted tribunal.

Garmon, 359 U.S. at 242-43. Therefore,

> when an activity is *arguably* subject to §7 or §8 of the Act, the States, as well as the federal courts *must defer* to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policies is to be averted.

Accord Healthcare Ass'n of New York State, Inc. v. Pataki, 471 F.3d 87, 95 (2d Cir. 2006) ("But Garmon extended preemption further: "When an activity is *arguably* subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.""); Figueroa v. Nat'l Mar. Union of Am., AFL-CIO, 342 F.2d 400, 403 (2d Cir. 1965) ("'the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.'"); Domnister v. Exclusive Ambulette, Inc., 607 F.3d 84, 89 (2d Cir. 2010) ("In Garmon, the Supreme Court held that '[w]hen an activity is arguably subject to [§ ]7 or [§ ]8 of the [NLRA],

1-173-00003: 10630991

6

the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board.'").

Plaintiffs have filed a charge with the NLRB asserting violations of section 7 and 8(b) in the negotiation of what they characterize as an unlawful clause. And, Plaintiffs seek injunctive relief under the Board's 10(j) authority. They ask the Board for the same, complete relief they seek from this Court. Therefore, under Garmon this Court should decline to hear the TRO motion and defer to the Board's expertise.

### C. There is No Basis under Fed. R. Civ. P. 23 to Restrict 1199's Speech

Plaintiffs seek a temporary restraining order preventing the Union, a non-party to the litigation, from presenting the 2015 CBA for ratification to CPC home care workers. No case cited by the Plaintiffs involves a court restricting the speech of a non-party to the litigation (nor, in the short time the Union has had to research this issue, could any case be found).

Moreover, courts are reluctant to restrict the speech of a party, let alone a non-party. As the Supreme Court cautioned, any decision to restrict speech under Rule 23 "should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 (1981) (finding the district court abused its discretion in limiting plaintiffs and their counsel's communications with prospective class members); see also Coles v. Marsh, 560 F.2d 186, 189 (3d Cir. 1977) (holding that, in restricting communications, court must find "that the relief sought would be consistent with the policies of Rule 23 giving explicit consideration to the narrowest possible relief which protect the respective parties.").

Here, it is utterly unclear what speech of the Defendant Plaintiffs actually seek to restrict as the Defendant has no role in the Union's ratification process. Plaintiffs really seek to restrict a

non-party labor organization from ratifying the CBA or even communicating with its members who have chosen the Union as their exclusive bargaining agent. Even if Plaintiffs were entitled to restrict the Union's communications with its members under Rule 23, it is unclear to what extent restricting the Union's speech will at all protect the approximate 8-10% of the CPC membership who comprise the potential class. The Union intends to advise its members of the pending dispute, and Plaintiffs (and potential class members) retain the right to litigate their claims. See Ratner Decl. ¶¶ 1, 4, 19-20. Contrary to Plaintiffs' assertion, no communication by the Union would have any effect on any putative class member's ability to participate in a pending class action, as the Union has no intention of dissuading any member from participating in the litigation. The Union agrees with Plaintiffs that their claims should remain in federal court and are not covered by the arbitration provision, and while CPC and the Union disagree on that question, the dispute will be resolved by this Court and will have no impact on whether putative class members have the ability to fully litigate their claims. See id. at ¶ 10, 18-20. There is absolutely no basis for the Plaintiffs' suggestion that putative class members will be told by the Union that the CBA prohibits them from participating in this litigation. Thus, there is no basis to stop the ratification or in any way restrict 1199's speech.

### III. PLAINTIFFS APPLICATION FOR A TRO SHOULD BE DENIED BECAUSE THEY CANNOT SHOW THAT THEY WILL SUFFER IMMEDIATE AND IRREPARABLE HARM

Plaintiffs' application for a TRO should be denied because Plaintiffs cannot show that they will suffer immediate and irreparable harm. Sampson v. Murray, 415 U.S. 61, 88 (1974) ("the basis of injunctive relief in the federal courts has always been irreparable harm..."). The United States Supreme Court has stated that a TRO should not be issued in the absence of actual harm—i.e., a mere possibility of harm is not sufficient to meet the irreparable harm standard. Id.

at 91-92 (holding that potential loss of income for an indefinite period of time coupled with possible reputational damage, was insufficient to meet the standard of irreparable injury). Further, irreparable harm cannot be found where there are adequate remedies at law. Sampson, 415 U.S. at 953 ("Mere injuries, however substantial…are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.").

Here, Plaintiff cannot meet the high burden of showing immediate and irreparable harm. Plaintiffs identify three (3) "harms" that they will suffer absent a TRO. These harms are: (1) the possibility that individuals will ratify the contract without understanding the potential impact on this lawsuit; (2) the possibility that individuals will be told that ratification of the contract will prohibit them from participating in this lawsuit; and (3) the possibility that the mandatory arbitration clause will be found enforceable retroactively and arbitration will be too costly for individuals to pursue. See Pls. Br. at 13 (Dkt. 22). All three of these "harms" are speculative, remote, and either easily remediable or illusory.

Plaintiffs' claim that the contract may be ratified without a full understanding of the potential impact on this litigation is merely based upon bald supposition – which is refuted supra at page 8 – as to what the Union will communicate to its members. Nonetheless, even if it were based in fact, there would be no effect on this lawsuit unless the Court concludes that the arbitration clause is retroactively enforceable. On that issue both Plaintiffs and the Union are aligned – i.e., both Plaintiffs and the Union believe that the arbitration clause has no retroactive effect and, therefore, does not impact this litigation. Thus, any "harm" is remote. Finally, any "harm" will be prevented by the Union's explanation of the clause and this lawsuit to the members, as well as Plaintiffs' participation in the ratification process. In addition, Plaintiffs

have the right to vote, as well as speak with their co-workers and explain to them the effect of the arbitration clause and the reasons the contract should not be ratified. This is the purpose of the ratification process and eliminates any potential "harm."

Plaintiffs' claim that individuals may be told that ratification of the contract will prohibit them from participating in this lawsuit is similarly infirm as Plaintiffs are merely speculating as to what the Union will communicate to individuals, and any potential "harm" can be prevented by Plaintiffs' participation in the ratification process. In addition, should the court decide to certify a class under Rule 23, the parties could agree, and/or the court could require, that class notice be provided in-person at mandatory staff meeting(s). Thus, not only is the "harm" easily remedied, but it is also remote as Plaintiffs have not even filed a motion for class certification.

Finally, Plaintiffs' claim that the mandatory arbitration clause may be found enforceable retroactively and arbitration will be too costly for individuals to pursue does not constitute irreparable harm. As discussed above, any "harm" is remote and speculative because the court has yet to decide whether the arbitration clause applies retroactively. Moreover, even if the court did ultimately find that the arbitration clause applies retroactively, Plaintiffs' cost argument is without merit. First, if the Union decides to pursue a grievance to arbitration, the Union would pay for the arbitration, not the individuals. Second, were the Union to decide not to proceed with an arbitration, the individuals would be entitled to recover costs and statutory attorney fees if they prevail. Thus, the arbitration procedure is potentially less costly to individuals, or at worst, cost neutral.

Dated: January 20, 2016                               Respectfully submitted,

                                                      LEVY RATNER, P.C.
                                                      /s/ Daniel J. Ratner
                                                      By: Daniel J. Ratner
                                                      Attorneys for Non-Party
                                                      *1199SEIU United Healthcare Workers East*
                                                      80 Eighth Avenue, Floor 8
                                                      New York, New York 10011
                                                      (212) 627-8100
                                                      (212) 627-8182 (fax)
                                                      dratner@levyratner.com