UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————————x

LAI CHAN, HUI CHEN, and XUE XIE, individually and
on behalf of all others similarly situated,

                 *Plaintiffs*,

           - against –

CHINESE-AMERICAN PLANNING COUNCIL HOME
ATTENDANT PROGRAM, INC.,

                *Defendant*.

———————————————————————————————x

1:15-CV-09605 (KBF) (SN)

## DEFENDANT CHINESE-AMERICAN PLANNING COUNCIL HOME ATTENDANT PROGRAM, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER

**Hogan Lovells US LLP**
**875 Third Avenue**
**New York, New York 10022**
**(212) 918-3000**

**Of Counsel**
    **Kenneth Kirschner**
    **Jose Irias**

\\NY - 038170/000002 - 4667639 v5

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

    I.    PLAINTIFFS' REQUEST FOR THE COURT TO SUPERVISE OR
        RESTRAIN DEFENDANT'S NONEXISTENT COMMUNCIATIONS
        WITH PLAINTIFFS AND PUTATIVE CLASS MEMBERS IS
        IMPROPER AND UNNECSSARY ........................................................................ 2

        A.    CPC Has Not Communicated with Putative Class Members and
            Does Not Intend to Do So .................................................................... 3

        B.    Plaintiffs Acknowledge That The Union and CPC Do Not Agree
            On the Scope of the 2015 MOA ........................................................... 4

    II.    THIS COURT DOES NOT HAVE PRIMARY JURISDICTION TO
        DECIDE THIS ISSUE AND DOES NOT HAVE THE POWER TO
        ISSUE INJUNCTIVE RELIEF IN THIS CASE ................................................... 5

        A.    This Court Should Defer to the National Labor Relations Board,
            Which Has Primary Jurisdiction Over This Matter .................................. 5

        B.    The Norris-LaGuardia Act Limits This Court's Power to Issue
            Injunctive Relief In Connection With The Instant Motion ....................... 7

    III.    RULE 65(d)(2)(C) DOES NOT AUTHORIZE THE ORDER THAT
        PLAINTIFFS SEEK, AND IN ANY EVENT PLAINTIFFS FAIL TO
        MEET THE STANDARD FOR TEMPORARY RESTRAINING
        ORDERS ........................................................................................................... 8

        A.    Rule 65(d)(2) Does Not Authorize Injunctions Against Non-Parties,
            Absent Exceptions Inapplicable Here ....................................................... 8

        B.    Even If This Court Could Grant A Temporary Restraining Order,
            Such Relief Is Not Warranted ................................................................. 10

            1.    Plaintiffs Do Not Have A Likelihood of Success on the
                Merits ....................................................................................... 10

            2.    Plaintiffs Cannot Demonstrate That They Will Be
                Irreparably Harmed In the Absence of A Temporary
                Restraining Order ..................................................................... 11

\\NY - 038170/000002 - 4667639 v5

3.      The Balance of Hardships Does Not Tip Decidedly in
        Plaintiffs' Favor ................................................................................ 12

CONCLUSION.................................................................................................................. 13

\\NY - 038170/000002 - 4667639 v5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blockowicz v. Williams*,
   630 F.3d 563 (7th Cir. 2010) ...............................................................................10

*Carroll v. Am. Fed'n of Musicians of U. S. & Canada*,
   310 F.2d 325 (2d Cir. 1962).....................................................................................7

*Emporium Capwell Co. v. WACO*,
   420 U.S. 50 (1975).....................................................................................................7

*Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776*,
   346 U.S. 485 (1953)................................................................................................5, 6

*Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*,
   457 U.S. 702 (1982)...................................................................................................7

*Matrix Essentials v. Quality King Distribs., Inc.*,
   346 F. Supp. 2d 384 (E.D.N.Y. 2004) ...................................................................10

*Moreno v. Future Health Care Servs., Inc.*,
   No. 500569/13, 43 Misc. 3d 1202(A), 2014 WL 1236815 (Sup. Ct. Kings
   Cnty. Jan. 16, 2014) ...............................................................................................10

*MyWebGrocer, LLC v. Hometown Info, Inc.*,
   375 F.3d 190 (2d Cir. 2004).....................................................................................10

*New York v. Operation Rescue Nat'l*,
   80 F.3d 64 (2d Cir. 1996)...........................................................................................9

*Regal Knitwear Co. v. NLRB*,
   324 U.S. 9 (1945).........................................................................................................9

*Salinger v. Colting*,
   607 F.3d 68 (2d Cir. 2010).......................................................................................11

*San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*,
   359 U.S. 236 (1959)......................................................................................................5

*Severin v. Project OHR, Inc.*,
   No. 10 Civ. 9696, 2012 WL 2357410 (S.D.N.Y. June 20, 2012)...........................10

\\NY - 038170/000002 - 4667639 v5

*Vaca v. Sipes*,
   386 U.S. 171 (1967).................................................................................................5

*Zepeda v. INS*,
   753 F.2d 719 (9th Cir. 1983) ...................................................................................9

**Statutes**

29 U.S.C. § 157............................................................................................................5

29 U.S.C. § 158(a)(1).....................................................................................................5

Norris-LaGuardia Act, 29 U.S.C. §§ 101 *et seq*. ...........................................................7

National Labor Relations Act ..................................................................................6, 7, 8

New York Labor Law ...................................................................................................11

**Other Authorities**

Fed. R. Civ. P. 23 ..........................................................................................................3

Fed. R. Civ. P. 65 ...................................................................................................8, 9, 10

\\NY - 038170/000002 - 4667639 v5

**INTRODUCTION**

Defendant Chinese-American Planning Council Home Attendant Program, Inc. ("CPC") is a home health care agency that employs more than one thousand employees represented by 1199SEIU United Healthcare Workers East ("1199" or "Union"). For the entirety of the class period alleged, from 2009 to the present, CPC and 1199 have been parties to successive collective bargaining agreements, all of which have been the result of industry-wide negotiations. *See* Kirschner Decl. at ¶ 2. In 2014, CPC and 1199 entered into a Memorandum of Agreement covering the period from March 1, 2014 to March 31, 2015 ("2014 MOA") that expressly contemplated that the parties would meet, discuss, and agree on an alternative dispute structure. The 2014 MOA provides in pertinent part:

> ALTERNATIVE DISPUTE RESOLUTION
>
> 24.    The Parties agree that given changes in federal and state law imposing new obligations on the Employer and exposing Employers to a significantly increased level of litigation, it is in the interest of the Union, Employees and the Employer to develop an expeditious and effective alternative dispute resolution procedure for the resolution of claims arising under such laws. Accordingly, between the execution of this Agreement and December 1, 2014, or as otherwise agreed by the parties, the parties shall meet in good faith to negotiate such an alternative dispute resolution procedure. If the parties are unable to agree to such a procedure in the allotted time, the Employer may submit the dispute to Martin F. Scheinman for final and binding arbitration.

2014 MOA, Dkt. No. 7-3, Ex. B.

Plaintiffs now accuse CPC of "us[ing] the Union to negotiate a new ADR provision during the pendency of this action" in order to compel arbitration of Plaintiffs' claims.[1] Dkt. No. 22 at 6. But as Plaintiffs well know, the 2014 MOA's alternative dispute resolution provision, which was

---

[1]    In an even more conspiratorial tone, Plaintiffs also accuse CPC of "slipping the ADR proposal" into the collective bargaining agreement. Dkt. No. 22 at 1.

\\NY - 038170/000002 - 4667639 v5

negotiated on an industry-wide basis that began well before the institution of the instant action, required the parties to develop an ADR procedure. And as Plaintiffs themselves have acknowledged, the negotiations leading up to, and the resulting ADR provision in the 2015 MOA, were expressly contemplated by the 2014 MOA. *See* Plaintiff's Opp. to Mot. to Dismiss at 8 (noting that the 2014 MOA required CPC and the Union to develop an ADR procedure).

Further, the Union agreed on an industry-wide basis, not just with CPC, that the ADR process set forth in the 2015 MOA was an effective and efficient procedure for handling wage claims. Neither CPC nor Hogan Lovells was involved in the negotiation, and CPC signed essentially the same agreement that other home attendant agencies in the industry negotiated and signed. Kirschner Decl. at ¶¶ 5, 6, 8–10. Plaintiffs' claim that CPC engaged in any inappropriate negotiations with the Union is completely false and cannot support their claim that CPC's communications with putative class members must be restricted, as is more fully set forth below.

## ARGUMENT

I.   **PLAINTIFFS' REQUEST FOR THE COURT TO SUPERVISE OR RESTRAIN DEFENDANT'S NONEXISTENT COMMUNCIATIONS WITH PLAINTIFFS AND PUTATIVE CLASS MEMBERS IS IMPROPER AND UNNECSSARY**

Plaintiffs' request for supervision over CPC's communications with Plaintiffs and putative class members is meritless. CPC has not had any communication with Plaintiffs or the putative class members regarding the 2015 MOA or the ratification process nor does CPC intend to have such communication with its employees. *See* Kirschner Decl. at ¶¶ 5, 6. Plaintiffs are seeking to enjoin the ratification vote in a desperate attempt to claim that the 2015 MOA that was negotiated on an industry-wide basis is somehow part of an alleged improper

communication with a putative class.  The Union, which is not a party to this action, should not

be restrained from explaining the 2015 MOA and seeking ratification by its members.

**A.     CPC Has Not Communicated with Putative Class Members and Does Not Intend to Do So**

Plaintiffs' allegation that CPC has been in communication with putative class members

regarding the 2015 MOA is erroneous.  Plaintiffs have not shown and cannot show that CPC has

attempted to engage putative class members in an improper manner, as discussed above.  Neither

CPC nor its present counsel was involved in the negotiation of the ADR provisions in the 2015

MOA.  Moreover, CPC has committed to Plaintiffs' counsel that it will not participate in the

ratification process or communicate with putative class members about the 2015 MOA. *See*

January 19, 2016 Email from Kenneth Kirschner to David Colodny, Ex. A.  In discussing *Gulf*

*Oil*, Plaintiffs acknowledge that an order restricting communication should be "carefully drawn"

so that it "limits speech as little as possible, consistent with rights of the parties under the

circumstances."  Dkt. 22 at 12.  It makes little sense then for Plaintiffs to request any restriction

on a party that is not even alleged to be in direct communication with putative class members.

Furthermore, Plaintiffs have not cited a single case in their Point IV regarding Fed. R. Civ. P. 23

that involves an arbitration clause in a collective bargaining agreement or precludes a third party

such as the Union from engaging in regular and normal communications with its members about

the collective bargaining agreement it negotiated.  Dkt. 22 at 6–12.  Instead, each of the cases

Plaintiffs cite contemplates restrictions between parties to a litigation and potential class

members, not third parties such as the Union.

3

**B.     Plaintiffs Acknowledge That The Union and CPC Do Not Agree On the Scope of the 2015 MOA**

Plaintiffs' attempt to impute the actions of a nonparty to the litigation onto CPC as a means of demonstrating that CPC communicated improperly with putative class members is without merit.  Plaintiffs describe several communications made by the Union with respect to the 2015 MOA and the ratification process, including: A union representative speaking to its members about "extra" pay at trainings attended by Plaintiffs in December, the Union sending postcards to its members in January about the ratification process, and Plaintiffs' counsel's own correspondence with the Union in January regarding the instant motion.  Dkt. No. 22 at 4–6. After describing these interactions between the Union and the putative class, Plaintiffs state without further explanation that CPC has used the Union to negotiate a new ADR provision and to enter into agreements that would prevent participation in this litigation.  *Id.* at 6.  This is simply not true and is unsupported by any evidence.

Plaintiffs claim that CPC used the Union and "masked its communications with class members by hiding behind the Union" despite a "fundamental disagreement between the Union and [CPC] regarding the meaning and effect of the ADR provision."  Dkt. No. 22 at 11, 15. Plaintiffs cannot have it both ways.  It cannot be that the Union negotiated the ADR provisions of the 2015 MOA at the direction of CPC while at the same time disputing the meaning and scope of the very same provisions.  As discussed above, the ADR provisions of the 2015 MOA were contemplated well before Plaintiffs' claims were ever initiated.  Moreover, the 2015 MOA was the product of industry-wide, arms' length negotiations.  CPC simply signed essentially the same agreement that other home attendant agencies negotiated.

\\NY - 038170/000002 - 4667639 v5

II.   **THIS COURT DOES NOT HAVE PRIMARY JURISDICTION TO DECIDE THIS ISSUE AND DOES NOT HAVE THE POWER TO ISSUE INJUNCTIVE RELIEF IN THIS CASE**

A.   **This Court Should Defer to the National Labor Relations Board, Which Has Primary Jurisdiction Over This Matter**

This Court must refuse Plaintiffs' invitation to infringe on the NLRB's primary jurisdiction over what is nothing more than a thinly veiled unfair labor practice charge, and which is duplicative of pending NLRB charges recently filed by Plaintiffs.  As the Supreme Court has commanded, "[w]hen an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts *must* defer to the exclusive competence of the [NLRB]." *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 245 (1959) (emphasis added).  Section 7 of the Act provides that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Section 8 provides that "it shall be an unfair labor practice for an employer to interfere with, restrain or coerce employees in the exercise of the rights guaranteed in section 157 of this title." 29 U.S.C. § 158(a)(1). "[A]s a general rule, neither state nor federal courts have jurisdiction over suits directly involving" such activity.  *Vaca v. Sipes*, 386 U.S. 171, 179 (1967).

The rationale of the primary jurisdiction principle was outlined by a unanimous Supreme Court in *Garner v. Teamsters*.  In discussing the congressionally-established scheme for regulation of labor practices, the Court held:

> Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation,

5

complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies. . . . A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law. The same reasoning which prohibits federal courts from intervening in such cases, except by way of review or on application of the federal Board, precludes state courts from doing so.

*Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776*, 346 U.S. 485, 490-91 (1953).

Thus, the Supreme Court recognized that congressional commitment of authority over unfair labor practice disputes to the NLRB precludes state and federal courts from acting as the initial arbiters of alleged unfair labor practice claims involving issues such as the collective bargaining process and the union's ability to communicate with its members.

This Court should adhere to the Supreme Court's mandate that state and federal courts must respect the NLRB's primary jurisdiction over unfair labor practices, particularly given that Plaintiffs are already seeking similar relief before the Board, the determination of which is pending. *See* NLRB Unfair Labor Practice Charges Filed Against CPC and 1199, Ex. G. On December 28, 2015, Plaintiff Chan filed unfair labor practice charges against both CPC and 1199 that mirror the allegations made in the instant motion and seek the same injunctive relief. Specifically, the charge provides that Defendant "violated Section 8(a)(1) of the [NLRA] by entering [sic] the collective bargaining agreement which contained a mandatory arbitration clause that requires employees to waive section 7 rights, to prevent, prohibit, undermine, restrain, and/or discourage the employees from engaging in a collective action or class action to challenge the employer's policy." *Id.* As here, the charge requests injunctive relief to preclude ratification

6

of the 2015 MOA.  The Board has yet to make a determination on the matter.  This Court should follow Supreme Court guidance and allow the Board to be the initial arbiter.

**B.      The Norris-LaGuardia Act Limits This Court's Power to Issue Injunctive Relief In Connection With The Instant Motion**

Further, this Court may not enjoin 1199 from holding a meeting of its members to ratify the 2015 MOA under the Norris-LaGuardia Act ("N-L Act"), 29 U.S.C. §§ 101 *et seq.*, which provides that "[n]o court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons" from assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute.  29 U.S.C. § 104(f).  Labor disputes are defined broadly and include "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."  29 U.S.C.A. § 113(c). The N-L Act's prohibition on this Court's power to issue injunctive relief in the labor context is broad and subject to only a few narrowly-defined limitations, not applicable here.  *Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702 (1982); *Carroll v. Am. Fed'n of Musicians of U. S. & Canada*, 310 F.2d 325, 326-27 (2d Cir. 1962).

Here, Plaintiffs ask the Court to contravene the dictates of the N-L Act and the collective bargaining process, by enjoining the Union from holding a meeting of its members to allow them to peaceably assemble to vote on and possibly ratify the terms and conditions of employment

agreed to by the Union and CPC.[2]  Given the N-L Act's broad prohibition on injunctions in just

this context, and the strong policy in favor of the collective bargaining process, this Court should

decline their invitation to do so.

### III.   RULE 65(D)(2)(C) DOES NOT AUTHORIZE THE ORDER THAT PLAINTIFFS SEEK, AND IN ANY EVENT PLAINTIFFS FAIL TO MEET THE STANDARD FOR TEMPORARY RESTRAINING ORDERS

Plaintiffs next assert that they are entitled to temporary relief under Federal Rule of Civil

Procedure 65(d)(2)(C).  Yet the order they seek falls squarely outside of this Court's Rule 65

authority.  Even if it did not, Plaintiffs have not demonstrated that they meet the stringent

requirements for temporary restraining orders.

### A.    Rule 65(d)(2) Does Not Authorize Injunctions Against Non-Parties, Absent Exceptions Inapplicable Here

For the most part, Plaintiffs are unconcerned with restraining CPC's activities and

communications—because there have been none.  What they really seek is an order that, among

other things, (1) prevents the non-party Union from communicating with its members about a

collective bargaining agreement and seeking ratification of a new term, and (2) requires the non-

party Union to submit for review any future communications it plans to make about that new

term.  Dkt. No. 22 at 15.  Nowhere in their motion do Plaintiffs explain how Rule 65 authorizes

such unprecedented relief for such speculative claims.

---

[2]      It is improper for Plaintiffs as dissident members of 1199 to interfere with the collective bargaining agreement duly negotiated by their exclusive representative, 1199.  "Central to the policy of fostering collective bargaining, where the employees elect that course, is the principle of majority rule." *Emporium Capwell Co. v. WACO*, 420 U.S. 50, 62 (1975).  If the majority of a collective bargaining unit chooses union representation, the National Labor Relations Act permits them to bargain with their employer to make union membership a condition of employment, thereby imposing their choice upon the minority.  *Id.*  Plaintiffs cannot bypass the grievance procedure negotiated by their exclusive representative and attempt to change the process agreed upon by the majority.

What Rule 65 in fact authorizes is injunctive relief targeted at the parties to the case. If the requirements for a preliminary injunction or a temporary restraining order are met, a court may issue an order that "binds only the following": "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." Fed. R. Civ. P. 65(d)(2). Plaintiffs apparently assume that the Union falls under Rule 65(d)(2)(C), though they never explain why. But case law makes clear that they are wrong; the Union is not a person "in active concert or participation with" CPC, within the well-established meaning of Rule 65.

As a general rule, of course, a court has power only over the parties before it; "it may not attempt to determine the rights of persons not before the court." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983). It "must, therefore, tailor [an] injunction to affect only those persons over which it has power." *Id.* Nonetheless, Rule 65(d)(2)(C) offers two narrow exceptions. First, an injunction may in effect bind non-parties with which a party is in privity, because those non-parties can be said to have had their day in court. *See Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945). Plaintiffs have not argued—nor could they do so with a straight face—that the Union is a successor or assign of CPC, or is otherwise in privity with CPC. *See id.* (describing privity under Rule 65 as covering entities "who operate as merely a disguised continuance of the old employer") (internal quotation marks and citation omitted).

The second possibility under Rule 65(d)(2)(C)'s "in active concert or participation" provision is that a non-party may be enjoined (or, more accurately, held in contempt) if it aids or abets a party's violation of an existing injunction. *Id.* at 14; *see also New York v. Operation Rescue Nat'l,* 80 F.3d 64 (2d Cir. 1996). But Plaintiffs have not explained how those circumstances are even possible here—as no injunction against CPC has issued. Under Rule 65,

9

the District Court could at most issue an injunction that names CPC and controls CPC's communications, and that injunction could at most be enforced against the Union *if the Union helps CPC violate the injunction* (by, say, shuttling prohibited messages from CPC to its members).  Plaintiffs' assertion that the Union and CPC have been in cooperation in the past, in addition to being reckless, is no ground for this Court to directly enjoin the Union's behavior.  *See Blockowicz v. Williams*, 630 F.3d 563, 568 (7th Cir. 2010) ("Actions that aid and abet in violating the injunction must occur *after the injunction is imposed* for the purposes of Rule 65(d)(2)(C)[.]") (emphasis added).  Simply put, this Court cannot enjoin the Union right now.  And even if it (wrongly) enjoins CPC, it cannot hold the Union in contempt unless the Union performs prohibited tasks on behalf of CPC.  *See Matrix Essentials v. Quality King Distribs., Inc.*, 346 F. Supp. 2d 384, 392 (E.D.N.Y. 2004) ("Contempt will not lie against one who acts independently and whose rights have not been adjudicated.") (internal quotation marks and citations omitted).

### B.    Even If This Court Could Grant A Temporary Restraining Order, Such Relief Is Not Warranted

A party seeking a temporary restraining order or a preliminary injunction must demonstrate "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 192 (2d Cir. 2004).

### 1.    Plaintiffs Do Not Have A Likelihood of Success on the Merits

Plaintiffs cannot demonstrate that they have a likelihood of success on the merits.  There has not been any collective or class action certification in this case and prior cases involving

\\NY - 038170/000002 - 4667639 v5

home attendants have denied such class action requests.  *See*, *e.g.*, *Severin v. Project OHR, Inc.*, No. 10 Civ. 9696, 2012 WL 2357410 (S.D.N.Y. June 20, 2012) (denying Plaintiffs' class and collective certification of their claims); *Moreno v. Future Health Care Servs., Inc.*, No. 500569/13, 43 Misc. 3d 1202(A), 2014 WL 1236815 (Sup. Ct. Kings Cnty. Jan. 16, 2014) (same).

### 2.     Plaintiffs Cannot Demonstrate That They Will Be Irreparably Harmed In the Absence of A Temporary Restraining Order

Plaintiffs' speculation about the effects of the Union's potential ratification of the 2015 MOA is mere conjecture.  A "risk" that putative class members may be "adversely affected" does not rise to the level of irreparable harm.  Dkt. 22 at 13-14.  Plaintiffs' claim that the Union may tell the putative class members that the 2015 MOA will preclude them from joining the class also fails.  As Plaintiffs acknowledge, the Union disagrees with CPC about the scope of the 2015 MOA, so Plaintiffs cannot show that allowing the ratification vote to proceed will cause them irreparable harm.  Further, Plaintiffs have adequate remedy under the ADR process, which provides that "the Arbitrator shall apply appropriate law and shall award all statutory remedies and penalties, including attorneys' fees, consistent with the FLSA and New York Labor Law in rendering decisions regarding disputes arising under this Article."  2015 MOA, Dkt. No. 7-4, Ex. C.  Plaintiffs can vindicate their claims through the established arbitral process, and 1199 has been representing their interest at no cost to them in the proceedings before Arbitrator Scheinman.  Plaintiffs further claim that the ADR provisions of the 2015 MOA will be too costly, but this allegation is unsupported by any evidence.  Plaintiffs are not required to pay any monies since the Union has been representing them at the mediation before Arbitrator Scheinman.  The

fees are being split by 1199 and CPC.  And as already noted, the Arbitrator is required to apply the law and award all statutory remedies and penalties, including attorneys' fees.

### 3.     The Balance of Hardships Does Not Tip Decidedly in Plaintiffs' Favor

Where a plaintiff demonstrates a likelihood of success on the merits, the Court must nonetheless consider the balance of hardships "and issue the injunction only if the balance of hardships tips in the plaintiff's favor." *Salinger v. Colting,* 607 F.3d 68, 80  (2d Cir. 2010) (citing *Winter v. Nat. Res. Def. Council,* 555 U.S. 7, 20 (2008)).  Plaintiffs seek to enjoin 1199 from speaking to its members about a contract it negotiated.  However, Plaintiffs did not cite a single case that prevents such communication or the holding of a ratification vote on matters that 1199 negotiated in good faith with all employers in the industry. Allowing Plaintiffs to prevail would contravene federal labor policy and the First Amendment in a manner that would tip the balance of hardships decidedly against Plaintiffs' favor.  Indeed, such a restriction would not only weaken the strength of the Union's bargaining ability on behalf of Plaintiffs but the putative class in the future as well.

\\NY - 038170/000002 - 4667639 v5

## **CONCLUSION**

For the foregoing reasons, CPC respectfully requests that Plaintiffs' Motion be denied in its entirety and that the Court grant Defendant all available relief in connection with opposing the instant Motion.


Dated: New York, New York
        January 21, 2016

Respectfully submitted,

/s/ Kenneth Kirschner
Kenneth Kirschner
Jose Irias
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
Telephone: (212) 918-3260
Facsimile: (212) 918-3100

*Attorneys for Defendant Chinese-
American Planning Council Home
Attendant Program, Inc.*

\\NY - 038170/000002 - 4667639 v5