UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————————x

LAI CHAN, HUI CHEN, and XUE XIE, individually and on behalf of all others similarly situated,

        *Plaintiffs*,

        - against –

CHINESE-AMERICAN PLANNING COUNCIL HOME ATTENDANT PROGRAM, INC.,

        *Defendant*.

——————————————————————————x

1:15-CV-09605 (KBF) (SN)

**DEFENDANT CHINESE-AMERICAN PLANNING COUNCIL HOME ATTENDANT PROGRAM, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION OF THE MATTER AND STAY THE <u>PROCEEDINGS PENDING ARBITRATION</u>**

        **Hogan Lovells US LLP**
        **875 Third Avenue**
        **New York, New York 10022**
        **(212) 918-3000**

**Of Counsel**
    **Kenneth Kirschner**
    **Jose Irias**

## TABLE OF CONTENTS

|  | Page |
|---|---|
| INTRODUCTION | 1 |
| ARGUMENT | 1 |
| I. DESPITE PLAINTIFFS' ATTEMPTS TO THWART THE COLLECTIVE BARGAINING PROCESS, THE 2015 MOA IS IN EFFECT AND THIS COURT SHOULD COMPEL ARBITRATION | 1 |
|     A. The Parties Have Acted In Accordance With The 2015 MOA And Its Terms | 2 |
|     B. The 2015 MOA Is In Effect As It Has Been Agreed To By The Parties, Voted On and Ratified By The Plaintiffs' Fellow Employees And Union Members, And Ratified By CPC's Board Of Directors | 3 |
| II. THE 2015 MOA RETROACTIVELY APPLIES TO PLAINTIFFS' CLAIMS | 4 |
|     A. The Retroactive Effect of the Arbitration Agreement Is A Procedural Question That Must Be Answered By The Arbitrator | 4 |
|     B. The 2015 MOA Retroactively Applies to Plaintiffs' Claims | 5 |
| III. PLAINTIFFS CAN ADEQUATELY VINDICATE THEIR RIGHTS IN ARBITRATION | 9 |
| CONCLUSION | 10 |

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Apex Oil Co. v. Vanguard Oil & Serv. Co.*,
  760 F.2d 417 (2d Cir. 1985) ............................................................................................... 2

*Arrigo v. Blue Fish Commodities, Inc.*,
  408 F. App'x 480 (2d Cir. 2011) ................................................................................ 6, 7, 8

*Arrigo v. Blue Fish Commodities, Inc.*,
  704 F. Supp. 2d 299 (S.D.N.Y. 2010) ............................................................................. 10

*Ciago v. Ameriquest Mortg. Co.*,
  295 F.Supp.2d 324 (S.D.N.Y.2003) ................................................................................ 10

*Duraku v. Tishman Speyer Props., Inc.*,
  714 F. Supp. 2d 470 (S.D.N.Y. 2010) ............................................................................... 6

*Duran v. J. Hass Grp., L.L.C.*,
  531 F. App'x 146 (2d Cir. 2013) ....................................................................................... 4

*Empire State Carpenters Welfare Annuity v. Conway Constr. of Ithaca, Inc.*,
  No. 07-CV-2259(DRH)(ETB), 2010 WL 625352, at **6-7 (E.D.N.Y. Feb. 19,
  2010) ................................................................................................................................ 2

*Green Tree Fin. Corp.-Alabama v. Randolph*,
  531 U.S. 79 (2000) ...................................................................................................... 9, 10

*Green Tree Fin. Corp. v. Bazzle*,
  539 U.S. 444 (2003) .......................................................................................................... 4

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 ...................................................................................................................... 4

*John Wiley & Sons, Inc. v. Livingston*,
  376 U.S. 543 (1964) .................................................................................................. 2, 4, 5

*Long v. Fid. Water Sys., Inc.*,
  No. C-97-20118 RMW, 2000 WL 989914 (N.D. Cal. May 26, 2000) ............................. 8

*Martin v. SCI Mgmt. L.P.*,
  296 F.Supp.2d 462 (S.D.N.Y. 2003) ............................................................................... 10

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) .............................................................................................................. 4

*Ottley v. Sheepshead Nursing Home*,
    688 F.2d 883 (2d Cir. 1982) ...................................................................................8

*Peerless Importers, Inc. v. Wine, Liquor & Distillery Workers Union Local One*,
    903 F.2d 924 (2d Cir. 1990) ...................................................................................8

*Pontier v. U.H.O. Mgmt. Corp.*,
    No. 10 CIV. 8828 RMB, 2011 WL 1346801 (S.D.N.Y. Apr. 1, 2011) ....................6

*Sec. Watch, Inc. v. Sentinel Sys., Inc.*,
    176 F.3d 369 (6th Cir. 1999) ..................................................................................8

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*,
    198 F.3d 88 (2d Cir. 1999) .....................................................................................5

*Steele v. L.F. Rothschild & Co.*,
    701 F.Supp. 407 (S.D.N.Y.1988) .........................................................................10

*Thomas v. Carnival Corp.*,
    573 F.3d 1113 (11th Cir. 2009), *abrogated by Carter v. Doll House II, Inc.*,
    605 F. App'x 603 (11th Cir. 2015) .........................................................................8

*Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*,
    487 F.3d 89 (2d Cir. 2007) .....................................................................................2

*WorldCrisa Corp. v. Armstrong*,
    129 F.3d 71 (2d Cir. 1997) .....................................................................................5

**Federal Statutes**

National Labor Relations Act § 8(a)(1) .........................................................................3

National Labor Relations Act § 8(b)(1) .........................................................................3

\\NY - 038170/000002 - 4674934 v9

## INTRODUCTION

It is undisputed that Plaintiffs' claims in the instant complaint are wholly covered by the arbitration provisions in the existing collective bargaining agreement ("CBA") that was the result of industry-wide negotiations, bargained for by their representative, 1199SEIU United Healthcare Workers East ("1199" or "Union"), ratified by their fellow employees and putative class and collective action members, and approved by the Chinese-American Planning Council Home Attendant Program, Inc. ("CPC") Board of Directors.  Despite Plaintiffs' best efforts to sabotage years of good faith negotiations and to thwart their fellow employees' right to vote on the terms and conditions of their employment, the 2015 Memorandum of Agreement ("2015 MOA") has been formed, is in effect, and is enforceable.  Plaintiffs' claims that there is no basis for this Court to compel arbitration and their additional arguments in opposition to CPC's motion lack merit.[1]  For these reasons and the reasons set forth in CPC's Opening Brief dated December 15, 2015, this Court should compel arbitration of Plaintiffs' claims and stay the proceedings pending arbitration.

## ARGUMENT

**I.   DESPITE PLAINTIFFS' ATTEMPTS TO THWART THE COLLECTIVE BARGAINING PROCESS, THE 2015 MOA IS IN EFFECT AND THIS COURT SHOULD COMPEL ARBITRATION**

Plaintiffs' bargaining representative, 1199, and CPC have conducted themselves in accordance with the terms of the 2015 MOA and are bound to it and its arbitration provisions.

---

[1] Plaintiffs' contention that CPC has inappropriately communicated with potential class members was fully addressed in CPC's Memorandum of Law in Opposition to Plaintiffs' Motion for a Temporary Restraining Order.  Dkt. No. 32 at 2-4.  In addition, Plaintiffs' request that the Court decline to compel arbitration while the National Labor Relations Board ("NLRB" or "Board") reviews the 2015 MOA should be denied because Plaintiffs have little chance of prevailing before the Board, for the reasons stated in CPC's Statement of Position.  *See* Declaration of Kenneth Kirschner ("Kirschner Decl.") ¶¶ 8–11, Ex. A.

Further, Plaintiffs' desperate attempts to thwart the collective bargaining process and sabotage the 2015 MOA are improper and fail to invalidate the agreement. The Court should compel Plaintiffs to arbitrate their claims, as the agreement requires.[2]

### A. The Parties Have Acted In Accordance With The 2015 MOA And Its Terms

Plaintiffs claim erroneously that the agreement to arbitrate is governed by state-law principles. Plaintiffs' Opp'n at 9, Dkt. No. 17. But in the collective bargaining context, such agreements are subject to federal law, as informed by the policy of national labor laws and of which arbitration plays a "central role." *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 548 (1964). Further, it is well-settled that the existence of a contract, particularly in the collective bargaining context, may be established through the conduct of the parties recognizing the contract. *See Empire State Carpenters Welfare Annuity v. Conway Const. of Ithaca, Inc.*, No. 07-CV-2259(DRH)(ETB), 2010 WL 625352, at *6-7 (E.D.N.Y. Feb. 19, 2010) (finding a party's conduct sufficient to manifest its intent to abide by and be bound by the terms of a CBA); *see also Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 96-97 (2d Cir. 2007) (agreement was enforceable because plaintiffs' conduct was consistent with the existence of a binding agreement); *Apex Oil Co. v. Vanguard Oil & Serv. Co.*, 760 F.2d 417, 422 (2d Cir. 1985) ("[T]he existence of a contract may be established through conduct of the parties recognizing the contract."). CPC and 1199 have been acting in accordance with the 2015 MOA's provisions ever since they entered into the agreement on December 4, 2015. Since then, CPC has paid its employees, including Plaintiffs, at the wage and benefit rates set forth in the agreement and

---

[2] Arguments pertaining to the 2015 MOA also apply to the 2014 MOA. Moreover, Plaintiffs' claim that the decision of the New York Supreme Court, dated September 9, 2015 is the law of the case lacks support as addressed in CPC's Opening Brief. *See* CPC's Br. at 4, Dkt. No. 6. The reasons why this Court should compel arbitration under the 2014 MOA are set forth in CPC's state court brief at pages 10–12. *See* Kirschner Decl., Ex. B.

2

complied in all other respects with the terms of the agreement.  *See* Declaration of Ling Ma ("Ma Decl.") ¶ 8.  As such, the 2015 MOA is enforceable and binding on the parties.

### B. The 2015 MOA Is In Effect As It Has Been Agreed To By The Parties, Voted On and Ratified By The Plaintiffs' Fellow Employees And Union Members, And Ratified By CPC's Board Of Directors

The 2015 MOA is in effect, despite Plaintiffs' repeated attempts to circumvent the majority rule of 1199 and wrongly impose their own preferences on their fellow union members.  First, Plaintiffs filed a charge with the NLRB asserting violations of sections 8(a)(1) and 8(b)(1) of the National Labor Relations Act ("NLRA") and sought to enjoin ratification or implementation of the 2015 MOA, which the NLRA declined to do.  *See* Kirschner Decl. ¶ 7; Ex. C.  Then, just two days before 1199's scheduled vote to ratify the 2015 MOA, Plaintiffs filed a motion in this Court seeking to prevent such ratification as well as communication by CPC or 1199 (a non-party to this litigation) to the Plaintiffs' fellow employees about the 2015 MOA.  Dkt. No. 22.  The Court denied Plaintiffs' motion.  Dkt. No. 36.

On January 21, 2016, despite Plaintiffs' desperate endeavors, the members of 1199 ratified the 2015 MOA.  *See* Ma Decl. ¶ 3; Ex. A.  Further, the CPC Board of Directors ratified the agreement on January 20, 2016.  *See id.* ¶ 2.  Extraordinarily, in a last ditch effort to short circuit the good faith efforts and decisions of their union representative and fellow employees, Plaintiffs, on information and belief, through the Urban Justice Center ("UJC") then improperly reached out to the New York City Human Resources Administration ("HRA") to pressure it to delay or deny approval of the agreement.[3]  *See id.* ¶¶ 4, 5.  However, on January 28, 2016, HRA

---

[3]   CPC asserts that if either 1199 or CPC negotiated a CBA in good faith and one of those parties directed the HRA to delay or deny approval of the agreement, said party would be committing an unfair labor practice.  *See* Kirschner Decl. ¶ 12. As such, to the extent that the actions of UJC have tortiously interfered with the contract of CPC and 1199, CPC reserves all of its rights, including for damages.  Moreover, if the court deems there to be a question as to the

Deputy Commissioner Arnold Ng indicated to CPC Program Director Ling Ma that he expects HRA to approve the 2015 MOA within two weeks.[4]  *See id.* ¶ 6.  As such, the 2015 MOA is fully formed and should be enforced.

## II.     THE 2015 MOA RETROACTIVELY APPLIES TO PLAINTIFFS' CLAIMS

### A. The Retroactive Effect of the Arbitration Agreement Is A Procedural Question That Must Be Answered By The Arbitrator

Plaintiffs ask the Court to interpret the language in the 2015 MOA's arbitration agreement to determine if the agreement applies retroactively to their claims.  However, the arbitrator, not the court, must resolve issues of contract interpretation and arbitral procedure in the first instance.  *Duran v. J. Hass Grp., L.L.C.*, 531 F. App'x 146, 147 (2d Cir. 2013) (citing *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 453 (2003).  As the Supreme Court held in *John Wiley & Sons, Inc. v. Livingston*, once the court has determined that parties must submit the subject matter of a dispute to arbitration, "procedural questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."  376 U.S. at 557.  These procedural questions include claims of waiver, delay, or similar defenses to arbitrability. *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983).  And they include questions of time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate.  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84-85.  There is no question that the subject matter of this dispute is arbitrable, as all of Plaintiffs' claims are

---

current validity of the agreement, CPC reserves its right to move to disqualify UJC's representatives who may be potential witnesses to their conversations with HRA officials.  *Id.*
[4]     In any event, HRA has no say on the terms and conditions of employment of Plaintiffs because none of the Plaintiffs work on HRA cases.  *See* Ma Decl. ¶ 10.  But insofar as the Court finds that the 2015 MOA is not valid until approved by the HRA, CPC requests that this Court refrain from deciding the instant Motion pending such approval. This is particularly appropriate given that, upon information and belief, the delay in HRA approval is the result of Plaintiffs' improper maneuvering.

encompassed in the 2015 MOA arbitration agreement, which requires arbitration of all Fair Labor Standards Act ("FLSA"), New York Home Care Worker Wage Parity Law ("Wage Parity Law"), or New York Labor Law (together, "Covered Statutes") claims brought in any manner. 2015 MOA at 9 ¶ 1, Dkt. No. 7-4. Plaintiffs implicitly concede this point—nowhere in their opposition do they claim that their allegations are not encompassed by the arbitration provisions. *See generally* Plaintiffs' Opp'n. Given that the subject matter of Plaintiffs' claims is undoubtedly subject to mandatory arbitration, this Court must allow the arbitrator to decide the procedural question of the agreement's retroactive effect, as *John Wiley & Sons, Inc.* requires.

### B. The 2015 MOA Retroactively Applies to Plaintiffs' Claims

Nevertheless, should the Court assess the arbitration agreement's retroactive effect, it must hold that Plaintiffs' claims are subject to mandatory arbitration. Plaintiffs attempt to distinguish on-point decisions but fail to do so meaningfully, cite to several non-binding decisions from courts outside of the Second Circuit that are in any event inapposite, and make a variety of linguistic arguments that defy grammar and fail to overcome the strong presumption of arbitrability. None of these maneuvers are sufficient to overcome the decisions of courts in the Second Circuit holding that arbitration provisions that are ambiguous or silent on their retroactive effect should be construed in favor of arbitration.

In light of the strong federal policy in favor of arbitration, the Second Circuit held that "the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 99 (2d Cir. 1999) (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997)). "Doubts," the Court held, "should be

resolved in favor of coverage." *Id.*  Courts in this Circuit have followed this command and have repeatedly resolved ambiguity regarding the retroactive effect of an arbitration clause in favor of coverage.  CPC's Br. at 9-10, Dkt. No. 6.

In *Duraku v. Tishman Speyer Props., Inc.*, 714 F. Supp. 2d 470, 474 (S.D.N.Y. 2010), the court held that the fact that the arbitration agreement did not expressly state that it applied retroactively to employees, who like plaintiffs, had already filed their claims in federal court, did not "relieve plaintiffs of their obligation to abide" by the alternative dispute resolution procedure. *See also Pontier v. U.H.O. Mgmt. Corp.*, No. 10 CIV. 8828 RMB, 2011 WL 1346801, at *3 (S.D.N.Y. Apr. 1, 2011) (same).  Plaintiffs do not disagree with the court's holding.  Indeed, they point out approvingly that the arbitration clause in *Duraku* mandated arbitration of past claims because it stated that "*[w]henever* it is claimed that an employer has violated the no discrimination clause (including claims based in statute) of one of the CBAs, the matter *shall* be submitted to mediation."  Plaintiffs' Opp'n at 25, Dkt. No. 17 (quoting *Duraku*, 714 F. Supp.2d at 474 (emphasis in original)).  CPC agrees and notes that the 2015 MOA contains nearly identical language: "*Whenever* the parties are unable to resolve a grievance alleging a violation of any of the Covered Statutes, before the matter is submitted to arbitration, the dispute *shall* be submitted to mandatory mediation."  2015 MOA at 9 ¶ 1, Dkt. No. 7-4 (emphasis added).  Hence, such language must be viewed as requiring retroactive application.

The Second Circuit's analysis in *Arrigo v. Blue Fish Commodities, Inc.* also weighs in favor of a finding of retroactivity.  Although the plaintiff there waived his argument that the arbitration agreement was not retroactive, the court explained clearly that the agreement was at least "susceptible of an interpretation that it cover[ed] preexisting disputes between the parties" because nothing in the arbitration provision placed a temporal limitation on arbitrability.  *Arrigo*

6

*v. Blue Fish Commodities, Inc.*, 408 F. App'x 480, 482 (2d Cir. 2011) (citation and internal quotation omitted).  Noting that any doubts should be resolved in favor of arbitrability, the court concluded that the parties agreed to arbitrate all of the plaintiff's claims, including those that accrued before the creation of the arbitration agreement.  *Id.*  Likewise, the plain language of the 2015 MOA requires mediation/arbitration of "all" wage claims, regardless of whether brought before or after the agreement.

Given the lack of any temporal limitation, the 2015 MOA's arbitration provision should be read to apply to Plaintiffs' claims.  Knowing this, Plaintiffs strive mightily to find a linguistic hook to find some implied temporal limitation, but their arguments make little sense logically or grammatically.  Plaintiffs' argument that terms such as "asserting" and "arising" are present tense and therefore indicate that the arbitration clause covers only future claims defies common sense: claims brought under the Covered Statutes are claims *asserting* or *arising* from those violations, regardless of whether they are brought today, yesterday, or tomorrow.  To be sure, Plaintiffs themselves have brought claims asserting violations of and arising out of the Covered Statutes regardless of when they brought the claims.  If anything, the arbitration provision's language implies retroactivity, as it requires arbitration of "all claims *brought* by either the Union or Employees."  2015 MOA at 9 ¶ 1, Dkt. No. 7-4.  By contrast, the agreement does not limit arbitration to all claims that the Union or Employee *shall* bring.  Further, Plaintiffs' assertion that the arbitration provision's purpose— "to ensure compliance with all federal, state, and local wage hour law and wage parity statutes"—must be forward-looking because it cannot ensure past compliance with laws, also falls flat.  Any time an employee or the Union initiate the mediation and arbitration procedure under the agreement, it will be in the context of some

7

alleged violation that has already occurred. The arbitrator, then, will be asked to assess CPC's past compliance, especially since there is a six-year statute of limitations for some claims.

If this Court finds, as it should, that nothing in the 2015 MOA places a temporal limitation on arbitrability, and that the agreement is "at least susceptible of an interpretation that it covers preexisting disputes between the parties," then the analysis should end there, and the Court should rule in favor of arbitrability. See *Arrigo,* 408 F. App'x at 482 (internal quotations omitted). However, Plaintiffs invite the Court to decide the matter instead based on the intent of (one) of the parties to the agreement.[5] They quote *Ottley v. Sheepshead Nursing Home*: "the arbitrability of any dispute turns in the first instance on the arbitration clause of the contract. This is so because our duty is to implement the intent of the parties." Plaintiffs' Opp'n at 21, Dkt. No. 17 (quoting *Ottley v. Sheepshead Nursing Home*, 688 F.2d 883, 886 (2d Cir. 1982)). However, Plaintiffs stop quoting the decision too soon, as the very next sentence states that "[t]o determine their intent, we must first examine the terms of their contract. If its arbitration clause is broad, then we must find that the parties bargained to have any dispute that arguably falls within the scope of that clause settled through arbitration, absent compelling proof to the contrary." The 2015 MOA's arbitration provision, which explicitly covers "all claims brought . . . in any manner" that assert violations of the FLSA, New York Labor Law, and Wage Parity Law is precisely the kind of broad arbitration provision requiring a finding that the parties bargained to have any arguably covered dispute arbitrated. 2015 MOA at 9 ¶ 1, Dkt. No. 7-4.[6]

---

[5]   The Court should refuse Plaintiffs' invitation to consider the Union's *ex-post*, subjective, and self-interested belief regarding the application of the arbitration provision to Plaintiffs' claims. CPC notes that the Union has every reason to claim it does not believe the arbitration clause applies retroactively, especially in light of Plaintiffs' unfair labor charges against 1199. *See* NLRB Charge Against 1199, Ex. C.

[6]   Plaintiffs invoke several decisions from courts of other Circuits, but these cases are not binding on this Court and are in any event inapposite. In the majority of these cases, the

### III. PLAINTIFFS CAN ADEQUATELY VINDICATE THEIR RIGHTS IN ARBITRATION

Next, Plaintiffs complain that arbitration will be so costly that they will be unable to vindicate their rights in that forum. But they do not support their allegation with any evidence whatsoever that they are actually likely to incur *any* costs, let alone prohibitive costs, by pursuing their claims through arbitration. Contrary to Plaintiffs' assertions, under the terms of the 2015 MOA, any fees pertaining to a grievance submitted by 1199 to mediation and/or arbitration are to be shared equally by 1199 and CPC only, with the employees bearing no fees at all. 2015 MOA at 9, 10 ¶¶ 2, 3, Dkt. No. 7-4. If and only if an employee requests that the Union process a grievance and the Union declines to do so, may that employee be required to share in the fees and costs of mediation/arbitration. *Id. See* Kirschner Decl. ¶ 5. And even then, CPC would be wholly responsible for all fees and expenses, should any violation of the Covered Statutes be found. *Id.* at 10 ¶ 4.

A party seeking "to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . . bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90-92 (2000). Plaintiffs do not meet their burden. As the Court is aware, CPC and 1199 have already initiated the mediation process before Arbitrator Scheinman. *See* Kirschner Decl. ¶ 4; Exs. D, E. Thus far in the mediation, 1199 has been representing Plaintiffs at no cost to them. *See* Kirschner Decl. ¶ 5.

---

arbitration provisions were expressly limited to only claims arising out of their respective agreements. *See Thomas v. Carnival Corp.*, 573 F.3d 1113 (11th Cir. 2009), *abrogation recognized by Carter v. Doll House II, Inc.*, 605 F. App'x 603 (11th Cir. 2015); *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369 (6th Cir. 1999); *Long v. Fid. Water Sys., Inc.*, No. C-97-20118 RMW, 2000 WL 989914, at *3 (N.D. Cal. May 26, 2000); *Peerless Importers, Inc. v. Wine, Liquor & Distillery Workers Union Local One*, 903 F.2d 924, 927 (2d Cir. 1990) (same). However, the 2015 MOA's arbitration provision is much broader—it applies not only to cases arising out of the agreement, but to all claims regarding Covered Statutes brought in any manner. 2015 MOA at 9 ¶ 1, Dkt. No. 7-4.

Because 1199 has not declined to take this grievance, all costs are being borne by it and CPC alone. *Id.* As such, at this point, any such risk is merely speculative and thus insufficient to render the arbitration agreement unenforceable. *Green Tree Fin. Corp.-Alabama*, 531 U.S. at 91.

Further, the alternative dispute resolution procedure affords Plaintiffs all the protections and remedies available in a federal judicial forum.[7] Plaintiffs would be entitled to, among other things, the same statute of limitations, right to discovery, etc. and all statutory remedies and penalties, including attorneys' fees, consistent with the FLSA and New York Labor Law. MOA at 9, 10 ¶¶ 1 – 6, Dkt. No. 7-4.

## CONCLUSION

For the foregoing reasons, and for the reasons given in its Motion to Compel Arbitration, CPC respectfully requests that this Court compel arbitration of all of Plaintiffs' claims, stay the proceedings, and that the Court grant Defendant all available relief, including costs and attorneys fees, in connection with the Motion.

---

[7] Contrary to Plaintiffs' assertions, it is well-established that FLSA claims are subject to arbitration. *See Arrigo v. Blue Fish Commodities, Inc.*, 704 F. Supp. 2d 299, 304 (S.D.N.Y. 2010) *aff'd*, 408 F. App'x 480 (2d Cir. 2011) (concluding that "Congress did not intend FLSA claims to be non-arbitrable"); *Martin v. SCI Mgmt. L.P.*, 296 F.Supp.2d 462, 467 (S.D.N.Y. 2003) (finding "no indication" that Congress intended plaintiff's FLSA claim to be nonarbitrable); *Ciago v. Ameriquest Mortg. Co.*, 295 F.Supp.2d 324, 332 (S.D.N.Y.2003) ("Congress has not evinced an intention to preclude arbitration of FLSA claims."); *Steele v. L.F. Rothschild & Co.*, 701 F.Supp. 407, 408 (S.D.N.Y.1988) (compelling arbitration of FLSA claims).

Dated: New York, New York
      January 29, 2016

Respectfully submitted,

/s/ Kenneth Kirschner
Kenneth Kirschner
Jose Irias
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
Telephone: (212) 918-3260
Facsimile: (212) 918-3100

*Attorneys for Defendant Chinese-American Planning Council Home Attendant Program, Inc.*